**ILG Legal Office, P.C.**
Stephen Noel Ilg (SBN 275599)
George L. Lin (SBN 287873)
156 South Spruce Ave., Unit 206A
South San Francisco, CA 94080
Tel:    (415)580-2574
Fax:    (415)735-3454
Email: silg@ilglegal.com
Email: glin@ilglegal.com

Attorneys for Plaintiff Emma Majo

UNITED STATE DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Emma Majo, an individual,<br><br>          Plaintiff,<br><br>vs.<br><br>Sony Interactive Entertainment LLC, a California limited liability company,<br><br>          Defendant. | Case No.  3:21-cv-09054<br><br>**CLASS AND COLLECTIVE ACTION**<br><br>**JURY TRIAL DEMANDED** |

This Complaint is brought by Plaintiff Emma Majo ("Plaintiff" and/or "Ms. Majo"), an individual, against her former employer, Defendant Sony Interactive Entertainment ("Sony" or "Defendant"). Plaintiff hereby demands a jury trial on all causes of action triable to a jury. Plaintiff alleges the following:

**PLAINTIFF**

1.      At all times material herein, Plaintiff was and is a competent adult and resident of the State of California, San Diego County. Plaintiff began working for Defendants in 2015.

**DEFENDANTS**

2.      Defendant Sony was and is a California limited liability company registered to do business in the State of California, including but not limited to conducting business within this

ILG Legal Office, P.C.
Tel: (415) 580-2574 | Email: help@ilglegal.com

District, specifically in San Mateo County, with its corporate headquarters located at 2207 Bridgepointe Parkway, San Mateo CA 94404. At all relevant times alleged herein, Plaintiff is informed and believes that Defendant Sony is authorized to and does conduct business in the State of California in the consumer technology industry, including but not necessarily limited to San Mateo County. Sony was formerly known as Sony Computer Entertainment, headquartered in Tokyo. Plaintiff was an employee of Sony Computer Entertainment America, the Americas regional office, regional HQ in San Mateo.  Global offices and Sony companies merged to become Sony Interactive Entertainment in April 2016, with global headquarters in San Mateo.

3.      To the extent any allegation contradicts another allegation, they are to be construed as "alternative" theories.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this action based on federal question jurisdiction pursuant to 28 U.S.C. § 1331. This action involves a dispute regarding violations of several federal laws, including but not limited to Section 16(b) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216; and 28 U.S.C. § 2201. The claims governed by California law constitute the same case and controversy raised in the claims under federal law because the claims governed by California law derive from a common nucleus of operative facts as the claims governed by federal law.

5.      The Northern District of California has personal jurisdiction over Sony Interactive Entertainment, LLC ("Sony") because Sony transacts significant business in the State of California and in this District.

6.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b); 29 U.S.C. § 216; and 28 U.S.C. § 2201, because Defendant conducts substantial business in the Northern District of California, and because, upon information and belief, unlawful employment practices originated in this District.

7.      Plaintiff duly filed her administrative charges before the California Department of Fair Employment and Housing ("DFEH").

///

ILG Legal Office, P.C.

Tel: (415) 580-2574  |  Email: help@ilglegal.com

*Majo v. Sony Interactive Entertainment LLC*
Class and Collective Action Complaint

**ILG Legal Office, P.C.**

Tel: (415) 580-2574 | Email: help@ilglegal.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

8.      Defendants regularly and systematically do business in the State of California and are subject to suit under the Fair Employment and Housing Act ("FEHA") in that Defendants regularly employ five or more persons. Plaintiff timely filed a charge of discrimination, failure to investigate discrimination and retaliation against Defendants with the California Department of Fair Employment and Housing ("DFEH"). On November 22, 2021, Plaintiff received a notice of the right to sue from the DFEH pursuant to California Government Code section 12965(b). Plaintiff filed this action within one year of the date of her DFEH right-to-sue letter(s); therefore, administrative remedies have been properly exhausted.

9.      Plaintiff has satisfied all private, administrative and judicial prerequisites to the institution of this action. Federal claims under the federal Equal Pay Act do not require any right-to-sue notice.

10.     Plaintiff will satisfy all applicable administrative requirements to pursue a claim under the Private Attorney General's Act then amend to add a claim pursuant to the Private Attorney General's Act, California Labor Code sections 2698 *et seq.*

11.     The California Workers' Compensation Act does not preempt this action because Defendant's unlawful practices, as alleged herein, are not risks or conditions of employment. Plaintiff is not required to satisfy any further private, administrative, or judicial prerequisites to the institution of this action, insofar as such prerequisites pertain to any of the remaining causes of action in this complaint.

**CLASS AND COLLECTIVE ACTION ALLEGATIONS**

12.     Plaintiff represents a class consisting of "All individuals employed by Sony Interactive Entertainment, LLC in California at any time during the time period beginning four years prior to the filing of this Complaint through the date of trial in this action who are either (a) female or (b) identify as female."

13.     Plaintiff alleges that employees who are female or identify as female (a) were not compensated equally to male employees who had substantially similar job classifications, functions, titles, and/or duties; (b) were not compensated equally to male employees who

ILG Legal Office, P.C.

Tel: (415) 580-2574 | Email: help@ilglegal.com

performed substantially similar work; (c) were denied equal compensation to similarly situated male employees by being held back to lower pay levels; and/or (d) were denied promotions.

14.     Sony reports that forty-one percent (41%) of PlayStation owners are females (i.e., 41% of the owners of the two most recent consoles, the PS4 and PS5 consoles). (*See* https://www.Sony.com/en/Sony_Info/IR/library/presen/irday/pdf/2021/GNS_E.pdf [last visited November 21, 2021]. Even though nearly half of PlayStation owners are females, a 2020 study revealed that Sony's Executive Committee was 100% male. (*See* https://20-first.com/wp-content/uploads/2020/08/200825-2020-Global-Gaming-Scorecard-Web.pdf [last visited November 21, 2021].) The report was prepared by "20-first Research" which analyzes "progress on gender balance in the top companies of a number of industries and countries, as well as across the Top 100 companies of the Fortune Global 500. For more [information], go to https://20-first.com/thinking." Sony received the worst possible rating, "Asleep" because Sony did not have any females in either Staff or Line leadership roles. There was no female representation at all on the Executive Committee. A copy of the report is appended hereto as Exhibit A.

15.     Sony tolerates and cultivates a work environment that discriminates against female employees, including female employees and those who identify as female.[1]  Female employees are subjected to continuing unlawful disparate treatment in pay and work opportunities. Moreover, Sony's policies and procedures have an ongoing disparate impact on female employees. Sony maintains policies and practices regarding the promotion process that promote gender-based inequities in title and compensation. Sony maintains policies and practices regarding advancement that lead to gender-based inequities favoring males regarding promotions. Sony's discriminatory policies, practices, and procedures include a system where women are denied opportunities for advancement at Sony. Sony's nationwide practices, policies, and procedures result in lower compensation for female employees than similarly situated male employees.

16.     In general, the policies, practices, and procedures that govern the pay and

---

[1]     Throughout this Complaint, "female" employees is intended to refer to those individuals who were designated as female at birth and those who identify as female; individuals who "identify as female" can be ascertained by, among other things, pronouns listed in email signature lines or other work documents.

promotions of female employees lack the sufficient standards, quality controls, implementation metrics, transparency, and oversight to ensure equal opportunities for males and females at Sony.

17.     Because Sony's management does not provide sufficient oversight or safety measures to protect against intentional and overt discrimination or the disparate impact of facially neutral policies and procedures, female employees (including those who are female and those who identify as female) suffering from discrimination are without recourse. Whatever complaint and compliance policies may exist, lack meaningful controls, standards, implementation metrics, and means of redress such that upper management may ignore, disregard, minimize, cover up, mishandle, or otherwise fail to respond properly to evidence of discrimination in the workplace.

18.     Sony's policies, practices, and procedures are not valid, job-related, or justified by business necessity. Alternative, objective, and more valid procedures are available to Sony that would avoid such a disparate impact on female employees. Sony has failed or refused to use such alternative procedures.

19.     Upon information and belief, Sony's discriminatory employment practices, policies, and procedures are centrally established and implemented at the highest levels of Sony.

20.     Upon information and belief, Sony's employment policies, practices, and procedures are not unique or limited to any location; rather, they apply uniformly and systematically to employees throughout Sony, occurring as a pattern and practice throughout all locations.

21.     Because of Sony's systemic pattern and practice of gender discrimination, the Plaintiff and members of the proposed Class have suffered harm including lost compensation, back pay, employment benefits, and emotional distress.

22.     Plaintiff and members of the Class have no plain, adequate, or complete remedy at law to redress the rampant and pervasive wrongs alleged herein, and this suit is their only means of securing adequate relief. Plaintiff and members of the Class have suffered and are now suffering irreparable injury from Sony's ongoing, unlawful policies, practices, and procedures set forth herein, and they will continue to suffer unless those policies, practices, and procedures are enjoined by this Court.

ILG Legal Office, P.C.

Tel: (415) 580-2574 | Email: help@ilglegal.com

23. **Rule 23 Class Definitions**: Plaintiff proposes to represent the following Classes and Subclasses: The proposed Rule 23 "California Class" consists of: "All individuals employed by Sony Interactive Entertainment, LLC in California at any time during the time period beginning four years prior to the filing of this Complaint through the date of trial in this action who are either (a) female or (b) identify as female."

24. Plaintiff also proposes to represent a "Former Employee Subclass" under Rule 23 which consists of members of the California Class who are no longer employed by Sony.

25. Upon information and belief, there are more than 40 members of the proposed California Class and Former Employee Subclass.

26. Plaintiff is a member of the Class and Subclass.

27. The systemic gender discrimination described in this Complaint has been, and is, continuing in nature.

28. Plaintiff reserves the right to amend the class definitions based on discovery or legal developments.

29. **Efficiency of Class Prosecution of Class Claims**: Certification of the proposed classes and subclasses is the most efficient and economical means of resolving the questions of law and fact that are common to the claims of the Plaintiff and the Class. The individual claims of Plaintiff as a Class Representative, require resolution of the common questions concerning whether Sony has engaged in a pattern and/or practice of gender discrimination against its female employees, and whether its policies or practices have an adverse effect on the Class. The Class Representative seeks remedies to eliminate the adverse effects of such discrimination in her own life, career, and working conditions and in the lives, careers, and working conditions of the Class members, and to prevent Sony's continued gender discrimination. The Class Representative has standing to seek such relief because of the adverse effect that such discrimination has on her individually and on female employees generally. Sony caused Plaintiff's injuries through its discriminatory practices, policies, and procedures and through the disparate impact its policies, practices, and procedures have on female employees. These injuries are redressable through systemic relief, such as equitable and injunctive relief and other remedies sought in this action. In

addition, proper relief for Plaintiff's individual discrimination claims can include retroactive promotion and increased compensation. Plaintiff has a personal interest in the policies, practices, and procedures implemented at Sony.

30. To obtain relief for herself and the Class members, the Class Representative will first establish the existence of systemic gender discrimination as the premise for the relief she seeks. Without class certification, the same evidence and issues would be subject to re-litigation in a multitude of individual lawsuits with an attendant risk of inconsistent adjudications and conflicting obligations.

31. Certification of the proposed Class is the most reasonable and efficient means of presenting the evidence and arguments necessary to resolve such questions for the Class Representative, the Class members, and Sony.

32. **Numerosity and Impracticability of Joinder**: The Class that the Class Representative seeks to represent is so numerous that joinder of all members is impracticable. In addition, joinder is impractical as the employees are physically based in different locations throughout California. Fear of retaliation on the part of Sony's female employees is also likely to undermine the possibility of joinder.

33. **Common Questions of Law and Fact**: The prosecution of the claims of the Class Representative will require the adjudication of numerous questions of law and fact common to her individual claims and those of the Class she seeks to represent. Plaintiff's claims are typical of the claims pursued on behalf of the Class.

34. The common issues of law include, *inter alia*: (a) whether Sony has engaged in unlawful, systemic gender discrimination in its promotion and compensation policies, practices, and procedures; (b) whether the failure to institute adequate standards, quality controls, implementation metrics or oversight of those policies, practices, and procedures violates, the FEHA, or the California Equal Pay Act ("CEPA"), or the federal Equal Pay Act ("FEPA"), and/or other statutes; (c) whether the lack of transparency and opportunities for redress in those systems violates the FEHA, the CEPA, the FEPA, and/or other statutes; (d) a determination of the proper standard for proving whether Sony's employment policies had a disparate impact on the Classes

ILG Legal Office, P.C.

Tel: (415) 580-2574 | Email: help@ilglegal.com

and Subclasses; (e) a determination of the proper standards for proving a pattern or practice of discrimination by Sony against its female employees, and under the disparate treatment theory of liability for employees; (f) whether Sony's failure to prevent, investigate, or properly respond to evidence and complaints of discrimination in the workplace violates FEHA and other statutes; and (g) whether Sony is liable for continuing systemic violations of FEHA and other statutes.

35.     The common questions of fact include, *inter alia*: whether Sony has: (a) intentionally held back female employees on its pay scale because Sony does not provide the same opportunities for advancement; (b) used a compensation system that lacks appropriate standards, implementation metrics, quality controls, transparency, and opportunities for redress; (c) relied on compensation criteria that perpetuate discrimination; (d) compensated female employees less than similarly-situated male employees in salary and/or promotions; (e) minimized, ignored, or covered-up evidence of gender discrimination in the workplace and/or otherwise mishandled the investigation of and response to complaints of discrimination; (f) cultivated an indifference to evidence of discrimination in the workplace or otherwise minimized, ignored, mishandled, or covered up evidence of or complaints of gender discrimination; and (g) otherwise discriminated against female employees in the terms and conditions of employment.

36.     Upon information and belief, Sony's employment policies, practices, and procedures are not unique or limited to any location; rather, they apply uniformly and systematically to employees throughout Sony, occurring as a pattern and practice throughout all locations. They thus affect the Class Representative and Class members in the same ways regardless of the location in which they work. Discrimination in compensation occurs as a pattern and practice throughout Sony.

37.     **Typicality of Claims and Relief Sought**: The Class Representative's claims are typical of the claims of the proposed Class. The Class Representative possesses and asserts each of the claims asserted on behalf of the proposed Class. She pursues the same factual and legal theories and seeks similar relief.

38.     Like members of the proposed Classes and Subclasses, the Class Representative is a female who was employed by Sony during the liability period.

ILG Legal Office, P.C.

Tel: (415) 580-2574 | Email: help@ilglegal.com

39.     Differential treatment between male and female employees (i.e., employees who are female or identify as female) occurs as a pattern and practice throughout Sony. Sony discriminates against female employees, including those who are female and those who identify as female, in compensation and promotion and subjects them to a work culture predominated by men. This differential treatment has affected the Class Representative and Class Members in the same or similar ways.

40.     Sony has failed to respond adequately or appropriately to evidence and complaints of discrimination. The Class Representative and Class members have been affected in the same or similar ways by Sony's failure to implement adequate procedures to detect, monitor, and correct this pattern and practice of discrimination.

41.     Sony has failed to create adequate procedures to ensure its management complies with equal employment opportunity laws regarding each of the policies, practices, and procedures referenced in this Complaint, and Sony has failed to discipline adequately supervisors when they violate anti-discrimination laws. These failures have affected the Class Representative and the Class members in the same or similar ways.

42.     The relief necessary to remedy the Class Representative's claims is the same as that necessary to remedy the claims of the proposed Class Members.

43.     The Class Representative seeks the following relief for their individual claims and for the claims of the members of the proposed Classes: (a) a declaratory judgment that Sony has engaged in systemic gender discrimination against female employees, including those who are female and those who identify as female, by: (i) denying work opportunities to female employees on the basis of gender, (ii) paying females less than their male counterparts in base compensation, (iii) failing to investigate or respond to evidence of discrimination in the workplace against female employees, and (iv) otherwise exposing female employees to differential treatment; (b) a permanent injunction against such continuing discriminatory conduct; (c) injunctive relief that effects a restructuring of Sony's policies, practices, and procedures for promoting and awarding compensation to female employees; (d) equitable relief that effects a restructuring of Sony's compensation system so female employees receive the compensation they would have been paid

in the absence of Sony's discrimination; (e) back pay, front pay, reinstatement, and other equitable remedies necessary to make female employees whole from Sony's past discrimination; (f) compensatory damages; (g) punitive damages to deter Sony from engaging in similar discriminatory practices in the future; and (h) attorneys' fees, costs, and expenses.

44. **Adequacy of Representation**: The Class Representative's interests are coextensive with those of the members of the proposed Class. The Class Representative seeks to remedy Sony's discriminatory policies, practices, and procedures so female employees will not receive disparate pay and differential treatment.

45. The Class Representative is willing and able to represent the proposed Class fairly and vigorously as she pursues similar individual claims in this action.

46. The Class Representative has retained counsel sufficiently qualified, experienced, and able to conduct this litigation and to meet the time and fiscal demands required to litigate an employment discrimination class action of this size and complexity. The combined interests, experience, and resources of the Class Representative and her counsel to litigate competently the individual and class claims at issue in this case clearly satisfy the adequacy of representation requirement of Federal Rule of Civil Procedure 23(a)(4).

47. **Requirements of Rule 23(b)(2)**: Sony has acted on grounds generally applicable to the Class Representative and the proposed Class by adopting and following systemic policies, practices, and procedures that discriminate on the basis of gender. Gender discrimination is Sony's standard operating procedure rather than a sporadic occurrence.

48. Sony has also acted or refused to act on grounds generally applicable to the Class Representative and the proposed Class by, *inter alia*: (a) systematically, intentionally, or knowingly denying work opportunities for women in favor of similarly situated males; (b) using an assignment system that lacks meaningful or appropriate standards, implementation metrics, quality controls, transparency, and opportunities for redress: (c) compensating women less than similarly situated males in salary; (c) systematically, intentionally, or knowingly compensating women less than similarly situated male employees, including a difference in salary; (d) minimizing, ignoring, or covering up evidence of gender discrimination in the workplace and/or

*Majo v. Sony Interactive Entertainment LLC*
Class and Collective Action Complaint

ILG Legal Office, P.C.

Tel: (415) 580-2574 | Email: help@ilglegal.com

otherwise mishandling the investigation of and response to complaints of discrimination; (e) cultivating an indifference to evidence of discrimination in the workplace or otherwise minimizing, ignoring, mishandling, or covering up evidence of or complaints of gender discrimination: and (f) otherwise discriminating against women in the terms and conditions of employment as employees.

49.     Sony's policies, practices, and procedures with respect to compensation have led to gender discrimination and stratification. The systemic means of accomplishing such gender-based stratification include, but are not limited to, Sony's policies, practices, and procedures for awarding base compensation, bonus pay, and opportunities for promotions to female employees. These practices and procedures all suffer from a lack of transparency, adequate quality standards, and controls; sufficient implementation metrics; and opportunities for redress or challenge. Sony's systemic discrimination and refusals to act on nondiscriminatory grounds justify the requested injunctive and declaratory relief with respect to the Class as a whole.

50.     Injunctive, declaratory, and affirmative relief are a predominant form of relief sought in this case. Entitlement to declaratory, injunctive, and affirmative relief flows directly and automatically from proof of Sony's systemic gender discrimination. In turn, entitlement to declaratory, injunctive, and affirmative relief forms the factual and legal predicate for recovery by the Class Representative and Class members of monetary and non-monetary remedies for individual losses caused by the systemic discrimination, as well as their recovery of compensatory and punitive damages.

51.     **Requirements of Rule 23(b)(3)**: The common issues of fact and law affecting the claims of the Class Representative and proposed Class members—including, but not limited to, the common issues identified above— predominate over any issues affecting only individual claims. The common issues include whether Sony has engaged in gender discrimination against female employees.

52.     A class action is superior to other available means for fairly and efficiently adjudicating the claims of the Class Representative and members of the proposed Class.

53.     By virtue of the pattern and practice of discrimination at Sony, the Class

ILG Legal Office, P.C.
Tel: (415) 580-2574  |  Email: help@ilglegal.com

Representative and Class members are eligible for monetary remedies for losses caused by the systemic discrimination, including back pay, front pay, reinstatement, compensatory damages and other relief.

54.     In addition, or in the alternative, the Court may grant "partial" or "issue" certification under Rules 23(c)(4). Resolution of common questions of fact and law would materially advance the litigation for all Class members.

**COLLECTIVE ALLEGATIONS UNDER THE EQUAL PAY ACT**

55.     The proposed collective action "Nationwide Class" consists of: "All individuals employed by Sony Interactive Entertainment, LLC in the United States at any time during the time period beginning three years prior to the filing of this Complaint through the date of trial in this action who are either (a) female or (b) identify as female."

56.     Plaintiff alleges that the violations of the Equal Pay Act were willful, deliberate, and systematic.

57.     Plaintiff incorporates all allegations of the Complaint alleging class-based discrimination. Plaintiff brings collective claims under the Equal Pay Act pursuant to Section 16(b) of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 216(b), on behalf of all members of the Nationwide Class.

58.     The Nationwide Class seeks compensation because female employees (a) were not compensated equally to male employees who had substantially similar job classifications, functions, titles, and/or duties, (b) were not compensated equally to male employees who performed substantially similar work, and/or (c) were denied equal compensation to similarly situated male employees by being held back to lesser pay levels than male employees who performed substantially similar work and had substantially similar experience.

59.     Plaintiff and the Nationwide Class are similarly situated with respect to their claims that Sony paid and promoted them less than their male counterparts.

60.     There is a common nexus of fact and law suggesting that Plaintiff and the Nationwide Class members were discriminated against in the same manner.

61.     Questions at issue in the case include: a) Whether Sony unlawfully awarded less

ILG Legal Office, P.C.

Tel: (415) 580-2574 | Email: help@ilglegal.com

in pay to female employees than to similarly qualified male employees; b) Whether Sony unlawfully awarded less in bonuses to female employees than similarly qualified male employees; c) Whether Sony unlawfully assigned and continues to assign female employees into positions with lesser pay and other compensation than similarly qualified male employees; d) Whether Sony's resulting failure to compensate female employees on a par with comparable male employees was willful within the meaning of the Equal Pay Act.

62.     Claims for violations of the Equal Pay Act may be brought and maintained as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b), for all claims asserted by the Nationwide Class who opt-in to this action because Plaintiff's claims are similar to the claims of the Nationwide Class members.

63.     Plaintiff and the Nationwide Class members (a) are similarly situated; (b) have substantially similar job classifications, functions, titles, and/or duties; and (c) are subject to Sony's common policy and practice of gender discrimination in failing to compensate female employees commensurate with compensation given to male employees who perform substantially equal work.

### FACTS REGARDING PLAINTIFF'S INDIVIDUAL CAUSES OF ACTION

64.     Ms. Majo joined Sony in 2015.

65.     When Plaintiff began at Sony, her department was roughly 60:40 of men:women, but over the years Plaintiff observed a shift towards more and more males. As of 2021, Sony is dominated by males.

66.     Sony has managers (e.g. Yu Sugita) who will not be alone in a room with a female with the door closed; if Plaintiff went into a room with Sugita and a male colleague then Sugita would only speak to the male colleague. It would be as if Plaintiff was not even in the room.

67.     Eventually Plaintiff realized that if she really wanted something done, she needed to send the request through a male because if Plaintiff communicated directly to Sugita the request would be ignored. Plaintiff confirmed this by sending a request through a male intern. The request would garner a response when it came from a male intern while a virtually identical request would be ignored if it came from a higher-level female employee.

ILG Legal Office, P.C.

Tel: (415) 580-2574 | Email: help@ilglegal.com

ILG Legal Office, P.C.

Tel: (415) 580-2574 | Email: help@ilglegal.com

68.     Plaintiff observed a bias against females at Sony. In fact, Plaintiff left a specific department (SGRC (Security Governance, Risk, and Compliance)) because it became clear to her there was no path to get promoted. Plaintiff's requests for a path to management resulted in the creation of a plan for more levels within the department instead of any communication that tasks, behavior modification, or knowledge was needed on Plaintiff's part.

69.     Plaintiff often asked managers what she could do to get promoted. Plaintiff could not even get an answer to the question about what she could possibly do to get promoted. This occurred for several years in a row, with multiple managers. Managers would say something to the effect of, "yeah we should talk about that," but Plaintiff could never get an answer regarding what Plaintiff could do, as a female in the department, to earn a promotion.

70.     Plaintiff spoke to three separate managers about what she could do to get promoted. Not only did Plaintiff not get promoted or get an answer as to how she could get promoted, but in fact Plaintiff was effectively demoted. Plaintiff used to report to a VP; after asking about how to get promoted, she was then told to report to a manager below the VP. The VP claimed that they did not have time to handle subordinates. Plaintiff noticed that other male co-workers continued reporting to the VP.

71.     Plaintiff worked for Sony for half a decade, and Plaintiff did not earn a promotion from 2015 to 2021. Plaintiff was essentially in the same position for approximately six years. Plaintiff was unable to earn any managerial title and still had a staff title. Additionally, Plaintiff had the same direct subordinate for three years, but Sony never made Plaintiff's management role official. Plaintiff asked her manager what Plaintiff must do to become an official manager, but Plaintiff's manager would not answer the question.

72.     Plaintiff has also personally heard managers make gender-biased comments about female workers. For instance, if a female worker had some personal issue at any given time, managers would talk about how, "We can understand she is not performing well because she has a lot going on at home." Plaintiff has never heard comments like this about men; Plaintiff has only heard these comments about women. This behavior construes women as more emotional and less professional than male colleagues.

ILG Legal Office, P.C.

Tel: (415) 580-2574 | Email: help@ilglegal.com

73.     While in SGRC, Plaintiff was asked by the CFO to join a project underneath another department. Plaintiff's manager asked if job sharing between departments was a possibility temporarily. The new group manager was not open to job sharing. Plaintiff felt she had no room to negotiate and that Plaintiff essentially had to agree due to the politics. Plaintiff told Plaintiff's manager Plaintiff felt Plaintiff had to agree unless they could advocate for me. When Plaintiff left SGRC, Plaintiff's manager said Plaintiff could return anytime there was an opening. This was not actually true. There have been several openings in SGRC, and Plaintiff applied to transfer back into the department as Plaintiff realized the inability to get promoted was true throughout Sony, not just within SGRC. Plaintiff applied but was never allowed; in fact, Plaintiff was never even given an explanation, update, or answer. Plaintiff simply heard nothing about the application. This is for the exact same job Plaintiff had performed in the past. The jobs remained open.

74.     Approximately two and a half years ago, Plaintiff sought out a mentor. Plaintiff told this Sony mentor that Plaintiff was a flight risk because it appears it is impossible for her to earn a promotion or even get an answer about how Plaintiff can earn a promotion. The mentor said the only thing Plaintiff can do is speak to Plaintiff's current manager. There is no other path to get a promotion at Sony. Given that Plaintiff's manager would not even answer what she could do to get promoted, it became clear there was no possible way for her to get promoted at Sony.

75.     Sony sometimes promotes people "in cycle" (meaning around the time of annual performance reviews) and sometimes "out of cycle." The number of men promoted out of cycle is notable. Every "out of cycle" promotion Plaintiff knew of was for a male. This indicates that at Sony there are separate processes for men vs. women to get promoted.

76.     HR itself creates resistance when women try to get promoted. HR creates resistance by losing track of females seeking promotion. HR and managers also often say a person cannot be promoted because they do not currently hold a certain specific job title. Plaintiff believe Sony makes it harder for females to get promoted, and one way it does so is by looking at current job titles and deciding a person isn't qualified for a certain job because of her current job title, without a real examination of her skills.

ILG Legal Office, P.C.

Tel: (415) 580-2574 | Email: help@ilglegal.com

77.     In 2021, Plaintiff submitted a signed statement to Sony detailing the gender bias she has experienced at Sony. Soon after that, Plaintiff received a letter that she was being terminated. The notification from Sony stated that it was eliminating a certain department and that Plaintiff would be terminated because that department was being eliminated. However, this was a false basis to terminate Plaintiff because she was not even a member of the department being dissolved.

78.     Ms. Majo alleges she was not promoted, and she was demoted, because of gender bias, because she is a female, and because she spoke up about gender bias. She further alleges her termination was caused by gender bias against females, and because of bias against those who spoke up about gender bias.

**FIRST CLAIM**
**VIOLATION OF THE FAIR LABOR STANDARDS ACT OF 1938, as amended by THE EQUAL PAY ACT OF 1963, 29 U.S.C. § 216(b)**
**DENIAL OF EQUAL PAY FOR EQUAL WORK**
*(On behalf of Plaintiff and the Nationwide Class )*

79.     Plaintiff hereby re-alleges and incorporates by reference all allegations in each and every preceding paragraph as if fully set forth herein. This Claim is brought on behalf of Plaintiff and the Nationwide Class Members, including all Nationwide Class Members who "opt-in" to this action.

80.     Sony has discriminated against Plaintiff and all Nationwide Class Members within the meaning of the Equal Pay Act of 1963 in violation of the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 206, *et seq*., as amended by the EPA, by providing them with a lower rate of pay than similarly situated male colleagues on the basis of their gender, female, even though Plaintiff and all others similarly situated workers performed similar duties requiring the same skill, effort, and responsibility as their male counterparts.

81.     Plaintiff, all Nationwide Class Members, and similarly situated male employees all perform similar job duties and functions. Plaintiff, all Nationwide Class Members, and similarly situated male employees all performed jobs that required equal skill, effort, and responsibility.

82.     Sony discriminated against Plaintiff and all Nationwide Class Members by

-16-

subjecting them to discriminatory pay in violation of the Equal Pay Act.

83.     The differential in pay between male and female employees was not due to a legitimate seniority, merit, quantity or quality of production, or a factor other than sex, but was due to gender.

84.     Sony caused, attempted to cause, contributed to, or caused the continuation of pay discrimination based on gender, in violation of the EPA. The foregoing conduct constitutes a willful violation of the EPA within the meaning of 29 U.S.C. § 255(a). Because Sony has willfully violated the EPA, a three-year statute of limitations applies to such violations, pursuant to 29 U.S.C. § 255.

85.     As a result of Sony' conduct as alleged in this Complaint, Plaintiff and all Nationwide Class Members have suffered and continue to suffer harm, including but not limited to lost earnings, lost benefits, and other financial loss, as well as humiliation, embarrassment, emotional and physical distress, and mental anguish.

86.     By reason of Sony' discrimination, Plaintiff and all Nationwide Class Members are entitled to all legal and equitable remedies available for violations of the EPA, including liquidated damages, interest, and other compensation pursuant to 29 U.S.C. § 216(b).

87.     Attorneys' fees should be awarded under 29 U.S.C. §216(b).

**SECOND CLAIM**
Declaratory Judgment
28 U.S.C. § 2201
(*On behalf of Plaintiff and all Class Members* )

88.     Plaintiff hereby re-alleges and incorporates by reference all allegations in each and every preceding paragraph as if fully set forth herein.

89.     An actual controversy has arisen and now exists between the parties relating to the legal rights and duties of the parties as set forth above, for which Plaintiff desires a declaration of rights and other relief available pursuant to 28 U.S.C. § 2201. Rules 38 and 39 govern a demand for a jury trial. The existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate.

90.     A declaratory judgment is necessary and proper in that Plaintiff contends that Sony

ILG Legal Office, P.C.

Tel: (415) 580-2574 | Email: help@ilglegal.com

has committed and continues to commit the violations set forth above and, on information and belief, Sony will deny that it has done so and/or will continue to commit such acts.

### THIRD CLAIM
Violation of the California Equal Pay Act
Cal. Labor Code §§1197.5 *et seq.*, 1194.5
(*On behalf of Plaintiff and the California Class*)

91.     Plaintiff hereby re-alleges and incorporates by reference all allegations in each and every preceding paragraph as if fully set forth herein.

92.     Sony has discriminated and continues to discriminate against Plaintiff and all Class Members in violation of California Labor Code §1197.5 *et seq*. by paying its female employees at wage rates less than the wage rates paid to its male employees for substantially equal or similar work, when viewed as a composite of skill, effort, and responsibility, and performed under similar working conditions, throughout the Class Period.

93.     Sony's failure to pay women and men equal wages for performing substantially equal or similar work is not justified by any lawful reason.

94.     Sony has willfully violated California Labor Code §1197.5 by intentionally, knowingly, and/or deliberately paying women less than men for substantially equal or similar work throughout the Class Period. As a result of Sony's ongoing conduct, violation of California Labor Code §1197.5, and/or willful discrimination, Plaintiff Majo and Class members have suffered and will continue to suffer harm, including but not limited to lost earnings, lost benefits, and other financial loss, as well as non-economic damages. Plaintiff Majo and Class members are therefore entitled to all legal and equitable remedies available under law, including wages, interest, and liquidated damages.

95.     Sony has discriminated against Plaintiff and all California Class Members in violation of the California Equal Pay Act, Cal. Lab. Code § 1197.5 (West 2015) (amended 2015), *et seq*. Sony has paid Plaintiff and California Class Members less than similarly situated male employees in the same establishment performing equal work on jobs, the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.

-18-

ILG Legal Office, P.C.
Tel: (415) 580-2574 | Email: help@ilglegal.com

ILG Legal Office, P.C.

Tel: (415) 580-2574 | Email: help@ilglegal.com

96.    Sony has discriminated against Plaintiff and all California Class Members in violation of the California Equal Pay Act, Cal. Lab. Code § 1197.5 et seq. Sony has paid Plaintiff and all California Class Members less than similarly situated male employees performing substantially equal work, when viewed as a composite of skill, effort, and responsibility, and performed under similar working conditions.

97.    Sony subjected Plaintiff and all California Class Members to common discriminatory pay policies, including maintaining a discriminatory system of determining compensation; maintaining a discriminatory system for promotions; and other forms of discrimination affecting pay.

98.    The differential in pay between male and female employees was not due to seniority, merit, or the quantity or quality of production, a bona fide factor other than sex, such as education, training, or experience, but was due to gender. In the alternative, to the extent that Sony relied upon one or more of these factors, said factor(s) were not reasonably applied and did/do not account for the entire wage differential.

99.    The foregoing conduct constitutes a willful violation of the California Equal Pay Act, Cal. Lab. Code §1197.5 et seq., as amended by the California Fair Pay Act. Therefore, a three-year statute of limitations applies to such violations, pursuant to California Equal Pay Act, Cal. Lab. Code § 1197.5(h), *et seq.*, and California Equal Pay Act, as amended by the California Fair Pay Act, Cal. Labor Code § 1197.5(h).

100.    As a result of Sony's conduct alleged in this Complaint and/or Sony's willful, knowing, and intentional discrimination, Plaintiff and the Nationwide Class members have suffered and will continue to suffer harm, including but not limited to lost earnings, lost benefits, and other financial loss, as well as non-economic damages.

101.    Plaintiff and the California Class Members are therefore entitled to all legal and equitable remedies, including doubled compensatory awards for all willful violations.

///

///

///

ILG Legal Office, P.C.

Tel: (415) 580-2574 | Email: help@ilglegal.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### FOURTH CLAIM
### DISCRIMINATION & HARASSMENT—UNEQUAL PAY & FAILURE TO PROMOTE
(California Gov't Code §§ 12940 *et seq.*)
(*On behalf of Plaintiff and the California Class*)

102.    Plaintiff incorporates in this claim each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

103.    Plaintiff alleges that she and other Class Members were denied promotions and were paid less because they were female or identified as female.

104.    At all times mentioned herein, Defendant was an employer within the meaning of the California Fair Employment and Housing Act (Cal. Govt. Code §§ 12940 *et seq.*) ("FEHA") and Plaintiff was an employee within the meaning of FEHA. Defendant regularly employed five or more persons or, in the alternative, Defendant is a direct or indirect agent of an employer. *See* Cal. Govt. Code §§ 12926(d) ("'Employer' includes any person regularly employing five or more persons, or any person acting as an agent of an employer, directly or indirectly, the state or any political or civil subdivision of the state, and cities, except as follows: 'Employer' does not include a religious association or corporation not organized for private profit.'" *Id.* This claim is brought pursuant to FEHA, and the corresponding regulations promulgated by the California Department of Fair Employment and Housing. Defendant regularly and systematically does business in the State of California and is subject to suit under FEHA in that Defendant regularly employed five or more persons.

105.    With respect to harassment claims under subdivision (j) of Section 12940, the definition of an "employer" includes "any person regularly employing one or more persons or regularly receiving the services of one or more persons providing services pursuant to a contract, or any person acting as an agent of an employer, directly or indirectly, the state, or any political or civil subdivision of the state, and cities." Gov't Code § 12940(j)(4).

106.    With respect to discrimination, California Government Code section 12940(a) provides that it is an unlawful employment practice:

> For an employer, because of the race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, genetic information, marital status, sex, gender, gender identity, gender expression, age, sexual orientation, or military and veteran status of any person, to refuse to hire or

employ the person or to refuse to select the person for a training program leading to employment, or to bar or to discharge the person from employment or from a training program leading to employment, or to discriminate against the person in compensation or in terms, conditions, or privileges of employment.

107.    With respect to harassment, California Government Code section 12940(j)(1) provides:

For an employer, labor organization, employment agency, apprenticeship training program or any training program leading to employment, or any other person, because of race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, genetic information, marital status, sex, gender, gender identity, gender expression, age, sexual orientation, or military and veteran status, to harass an employee, an applicant, an unpaid intern or volunteer, or a person providing services pursuant to a contract. Harassment of an employee, an applicant, an unpaid intern or volunteer, or a person providing services pursuant to a contract by an employee, other than an agent or supervisor, shall be unlawful if the entity, or its agents or supervisors, knows or should have known of this conduct and fails to take immediate and appropriate corrective action. An employer may also be responsible for the acts of nonemployees, with respect to sexual harassment of employees, applicants, unpaid interns or volunteers, or persons providing services pursuant to a contract in the workplace, where the employer, or its agents or supervisors, knows or should have known of the conduct and fails to take immediate and appropriate corrective action. In reviewing cases involving the acts of nonemployees, the extent of the employer's control and any other legal responsibility that the employer may have with respect to the conduct of those nonemployees shall be considered. An entity shall take all reasonable steps to prevent harassment from occurring. Loss of tangible job benefits shall not be necessary in order to establish harassment.

This is a claim for relief arising from Defendant's causing, and its failure to prevent, discrimination and harassment against Plaintiff based on her gender.

108.    According to California Code of Regulations Title 2, section 11029(b) states:
The purpose of the laws against discrimination and harassment in employment because of sex is to eliminate the means by which individuals, by virtue of their sex, gender identity, or gender expression, are treated differently, paid less, treated adversely based on stereotyping, subjected to conduct of a sexual nature, subjected to hostile work environments, or made to suffer other forms of adverse action, and to guarantee that in the future equal employment benefits will be afforded regardless of the individual's sex

109.    As alleged above, Plaintiff was entitled to protection under FEHA because Plaintiff is an employee who has a protected characteristic based on her gender, specifically being female. California Class Members also have a protected characteristic.

-21-

ILG Legal Office, P.C.

Tel: (415) 580-2574 | Email: help@ilglegal.com

110.   As such, Plaintiff was entitled to FEHA's protection pursuant to California Government Code sections 12940 *et seq.* California Class Members are also entitled to FEHA's protections.

111.   Defendant was aware that Plaintiff was an employee who has a protected characteristic. The same is true for California Class Members.

112.   Pursuant to California Government Code section 12940(a), Defendant was prohibited from taking any adverse employment action motivated by the fact that an employee has a protected characteristic.

113.   Defendant's discriminatory and harassing actions against Plaintiff and California Class Members, as alleged above, including preventing females from being promoted and preventing females from equal payment, constituted unlawful discrimination in employment on account of the fact that Plaintiff was an employee that has a protected characteristic, in violation of California Government Code section 12940.

114.   Plaintiff is informed and believes and, based thereon, alleges that Defendant's conduct, as described herein, was substantially motivated by the fact that Plaintiff has a protected characteristic.

115.   As a direct and proximate result of the actions of Defendant, including the discrimination and harassment against Plaintiff and California Class Members as described herein, Plaintiff and California Class Members have suffered and will continue to suffer pain and extreme and severe mental anguish and emotional distress. Plaintiff and California Class Members have further suffered and will continue to suffer a loss of earnings and other employment benefits. Accordingly, Plaintiff and California Class Members are entitled to general compensatory damages in amounts to be proven at trial.

116.   By discriminating against and harassing Plaintiff and California Class Members in violation of Government Code section 12940, Defendant acted willfully, oppressively, maliciously and with conscious disregard for the rights of Plaintiff and California Class Members, and with the intent to annoy, harass or injure Plaintiff and California Class Members, in violation of California Civil Code section 3294, such that Plaintiff and California Class Members are

ILG Legal Office, P.C.
Tel: (415) 580-2574 | Email: help@ilglegal.com

entitled to recovery of punitive damages in an amount according to proof at trial.

117.   Upon information and belief, one or more of Defendant's managing agents committed, authorized, or ratified the wrongful conduct. As such, punitive damages are warranted against Defendants.

118.   Plaintiff seeks her attorneys' fees and costs pursuant to California Government Code section 12965(b).

### FIFTH CLAIM
### FAILURE TO PREVENT AND INVESTIGATE
### DISCRIMINATION AND HARASSMENT
(Gov't. Code § 12940 *et seq.*; *Tameny v. Atlantic Richfield Company*)
(*On behalf of Plaintiff and the California Class*)

119.   Plaintiff incorporates in this claim each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

120.   Under California law, there is a fundamental and well-established public policy against taking any adverse employment action motivated by the fact that an employee has a protected characteristic.

121.   Under the Fair Employment and Housing Act ("FEHA"), it is an unlawful employment practice to take any adverse employment action motivated by the fact that an employee has a protected characteristic. Said public policy is embodied in the Constitution of the State of California and California Statutory law, including but not limited to Gov't. Code § 12940. Jurisdiction is invoked in this court pursuant to FEHA and the public policy and common law of the State of California, pursuant to *Tameny v. Atlantic Richfield* Company, 27 Cal. 3d 167 (1980) and *Rojo v. Kliger,* 52 Cal. 3d 65 (1990).

122.   As alleged above, Plaintiff and California Class Members are entitled to protection under FEHA based on the fact that they are employees who have a protected characteristic.

123.   As such, Plaintiff and California Class Members were entitled to FEHA's protection pursuant to California Government Code section 12940 *et seq.*

124.   Defendant was aware that Plaintiff and California Class Members were/are employees who have a protected characteristic.

125.   At all times mentioned herein, Defendant was an employer within the meaning of

ILG Legal Office, P.C.

Tel: (415) 580-2574 | Email: help@ilglegal.com

-23-

FEHA and Plaintiff was an employee within the meaning of FEHA. Defendant regularly employed five or more persons or, in the alternative, Defendant is direct or indirect agents of an employer. *See* Cal. Govt. Code §§ 12926(d) ("'Employer' includes any person regularly employing five or more persons, or any person acting as an agent of an employer, directly or indirectly, the state or any political or civil subdivision of the state, and cities, except as follows: 'Employer' does not include a religious association or corporation not organized for private profit.'" *Id.* This claim is brought pursuant to FEHA, and the corresponding regulations promulgated by the California Department of Fair Employment and Housing. Defendants regularly and systematically do business in the State of California and is subject to suit under FEHA in that Defendants regularly employed five or more persons.

126.     Under FEHA, including California Government Code section 12940(k), and the common law of the State of California, Defendant owes to Plaintiff a duty to take all reasonable steps necessary to investigate or prevent harassment and discrimination.

127.     California Government Code section 12940(j)(1) provides that it is an unlawful employment practice:

> For an employer, … or any other person, because of race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, genetic information, marital status, sex, gender, gender identity, gender expression, age, sexual orientation, or military and veteran status, to harass an employee, an applicant, an unpaid intern or volunteer, or a person providing services pursuant to a contract. Harassment of an employee, an applicant, an unpaid intern or volunteer, or a person providing services pursuant to a contract by an employee, other than an agent or supervisor, shall be unlawful if the entity, or its agents or supervisors, knows or should have known of this conduct and fails to take immediate and appropriate corrective action. An employer may also be responsible for the acts of nonemployees, with respect to sexual harassment of employees, applicants, unpaid interns or volunteers, or persons providing services pursuant to a contract in the workplace, where the employer, or its agents or supervisors, knows or should have known of the conduct and fails to take immediate and appropriate corrective action. In reviewing cases involving the acts of nonemployees, the extent of the employer's control and any other legal responsibility that the employer may have with respect to the conduct of those nonemployees shall be considered. An entity shall take all reasonable steps to prevent harassment from occurring. Loss of tangible job benefits shall not be necessary in order to establish harassment.

128.     Plaintiff complained about the harassment and discrimination to at least one of

ILG Legal Office, P.C.

Tel: (415) 580-2574 | Email: help@ilglegal.com

Plaintiff's managers. Nonetheless, Defendant did not investigate Plaintiff's complaints or take action to stop the harassment and discrimination.

129.    Despite Defendant's knowledge of Plaintiff's complaints, Defendant failed to take immediate and appropriate corrective action to prevent discrimination, retaliation, and harassment. Defendant similarly failed to take all reasonable steps to prevent discrimination from occurring.

130.    Moreover, Defendant knew or should have known about the discrimination and harassment against Plaintiff. Defendant failed to take immediate and appropriate corrective action to prevent discrimination, retaliation, and harassment. Defendant similarly failed to take all reasonable steps to prevent discrimination from occurring.

131.    On information and belief, Defendant does not provide adequate anti-discrimination training to its workforce, which results in unlawful discrimination, unlawful harassment, unlawful retaliation and related violations against Plaintiff and California Class Members.

132.    Because of Defendant's failure to prevent and investigate harassment and discrimination, Plaintiff suffered adverse employment actions, including failure to promote and failure to pay females equally to males.

133.    Plaintiff is informed and believes and thereon alleges that, as a direct and proximate result of Defendant's willful, knowing, and intentional wrongful conduct, Plaintiff has suffered and continues to suffer damages in an amount subject to proof, but which are in excess of the jurisdictional minimum of this Court, and which include, but are not limited to, mental distress, anguish, indignation, humiliation, depression, anxiety, fear, and loss of sleep. Plaintiff and California Class Members have also suffered from a loss of earnings, other employment benefits and job opportunities and other monetary damages. Plaintiff and California Class Members are thereby entitled to general and compensatory damages in an amount to be proven at trial.

134.    Plaintiff seeks attorneys' fees and costs pursuant to California Government Code section 12965(b).

ILG Legal Office, P.C.

Tel: (415) 580-2574 | Email: help@ilglegal.com

135.    Defendant's acts alleged herein are malicious, oppressive, despicable, and in conscious disregard of Plaintiff's rights. Upon information and belief, one or more of Defendant's managing agents committed, authorized, or ratified the wrongful conduct. As such, punitive damages are warranted against Defendants.

### SIXTH CLAIM
Failure to Pay final wages
Cal. Labor Code §§ 201-203
(*On behalf of Plaintiff and the California Class*)

136.    Plaintiff hereby re-alleges and incorporates by reference all allegations in each and every preceding paragraph as if fully set forth herein.

137.    Sony has discriminated and continues to discriminate against Plaintiff and all California Class Members in violation of California Labor Code §1197.5 *et seq*. by paying its female employees at wage rates less than the wage rates paid to its male employees for substantially equal or similar work, when viewed as a composite of skill, effort, and responsibility, and performed under similar working conditions, throughout the Class Period.

138.    Sony's failure to pay women and men equal wages for performing substantially equal or similar work is not justified by any lawful reason.

139.    Sony has willfully violated California Labor Code §1197.5 by intentionally, knowingly, and/or deliberately paying women less than men for substantially equal or similar work throughout the Class Period.

140.    As a result of Sony's ongoing conduct, violation of California Labor Code §1197.5, and/or willful discrimination, Plaintiff Majo and Class members have suffered and will continue to suffer harm, including but not limited to lost earnings, lost benefits, and other financial loss, as well as non-economic damages.

141.    Plaintiff Majo and Class members are therefore entitled to all legal and equitable remedies available under law, including wages, interest, and liquidated damages.

///

///

///

*Majo v. Sony Interactive Entertainment LLC*
Class and Collective Action Complaint

ILG Legal Office, P.C.
Tel: (415) 580-2574 | Email: help@ilglegal.com

## SEVENTH CLAIM
### VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE, Cal. Bus. & Prof. Code § 17200 et seq. UNFAIR COMPETITION
(*On behalf of Plaintiff and the California Class*)

142.    Plaintiff hereby re-alleges and incorporates by reference all allegations in each and every preceding paragraph as if fully set forth herein.

143.    Sony is a "person" as defined under California Business & Professions Code § 17201.

144.    Sony's willful failure to pay women equally, to promote women equally, and otherwise to offer women equal employment opportunities as alleged above, constitutes unlawful, unfair and/or fraudulent activity prohibited by California Business and Professions Code §17200.

145.    As a result of its unlawful, unfair and/or fraudulent acts, Sony reaped and continues to reap unfair benefits and illegal profits at the expense of Plaintiff and the California Class.

146.    Sony should be enjoined from this activity.

147.    Accordingly, Plaintiff and the California Class members are entitled to restitution with interest and other equitable relief, pursuant to Business & Professions Code § 17203.

## EIGHTH CLAIM
### [PLACEHOLDER FOR PRIVATE ATTORNEY GENERAL ACT OF 2004 CLAIM]
Cal. Lab. Code  §§ 2698 *et seq.*
(*On behalf of Plaintiff and the California Class*)

148.    Plaintiff will add a claim pursuant to California Labor Code Sections 2698 *et seq.* after completing the necessary pre-filing exhaustion steps.

## PLAINTIFF EMMA MAJO'S INDIVIDUAL CLAIMS

## NINTH CLAIM
### WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY
(*Tameny v. Atlantic Richfield Company*)
(*On behalf of Plaintiff as an individual*)

149.    Plaintiff incorporates in this claim each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

-27-

150.    Jurisdiction is invoked in this court pursuant to the public policy and common law of the State of California, pursuant to *Tameny v. Atlantic Richfield Company,* 27 Cal. 3d 167 (1980).

151.    Defendant terminated Plaintiff's employment based upon Plaintiff having a protected characteristic and/or engaging in a protected activity, as alleged herein. For instance, Plaintiff was terminated because she is female and because she spoke up about discrimination against females.

152.    Plaintiff is informed and believes and, based thereon, alleges that Defendant's conduct, as described herein, was substantially motivated by Plaintiff having a protected characteristic and/or engaging in a protected activity, as alleged herein.

153.    The conduct of Defendant described herein above was outrageous and was executed with malice, fraud and oppression, and with conscious disregard for Plaintiff's rights, and further, with the intent, design and purpose of injuring Plaintiff.

154.    As a proximate result of Defendant's wrongful acts, Plaintiff has suffered, and continues to suffer, substantial losses incurred in seeking substitute employment and in earnings, bonuses, and other employment benefits; and has suffered, and continues to suffer, emotional distress in an amount according to proof at the time of trial.

155.    Defendant, through its officers, managing agents, and/or their supervisors, authorized, condoned and/or ratified the unlawful conduct described herein above. By reason thereof, Plaintiff is entitled to an award of punitive damages in an amount according to proof at the time of trial, as well as attorneys' fees and costs, pursuant to statute.

### TENTH CLAIM
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
(Civ. Code)
(*On behalf of Plaintiff as an individual*)

156.    Plaintiff incorporates in this claim each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

157.    The conduct complained of hereinabove was outside the conduct expected to exist in the workplace, was intentional and done for the purpose of causing Plaintiff to suffer

ILG Legal Office, P.C.

Tel: (415) 580-2574 | Email: help@ilglegal.com

**ILG Legal Office, P.C.**

Tel: (415) 580-2574 | Email: help@ilglegal.com

humiliation, mental anguish, and emotional and physical distress. Defendant's conduct was done with the knowledge that Plaintiff's emotional and physical distress would thereby increase, and was done with a wanton and reckless disregard of the consequences to Plaintiff.

158.    As a proximate result of Defendant's intentional infliction of emotional distress as hereinabove alleged, Plaintiff has been harmed in that Plaintiff has suffered humiliation, mental anguish, and emotional and physical distress, and has been injured in mind and health. As a result of said distress and consequent harm, Plaintiff has suffered such damages in an amount in accordance with proof at time of trial.

159.    Defendant engaging in the conduct as hereinabove alleged, acted oppressively and with reckless disregard of Plaintiff's rights and safety, thereby entitling Plaintiff to an award of punitive damages.

160.    Defendant authorized, ratified, and knew of the wrongful conduct complained of herein, but failed to take immediate and appropriate corrective action to remedy the situation and thereby acted oppressively and with reckless disregard of Plaintiff's rights and safety, entitling Plaintiff to an award of punitive damages.

161.    As a direct and proximate result of Defendant's conduct, Plaintiff sustained damages, including but not limited to, loss of earnings and earning potential, opportunities and other benefits of employment and employment opportunities and harm to her reputation, mental anguish, embarrassment, humiliation, and other emotional distress and/or medical and related expenses in an amount to be established at trial. As a result of this wrongful conduct, Plaintiff is entitled to attorneys' fees, costs, and injunctive relief.

162.    Moreover, in that, at all times referenced herein, Defendant intended to cause or acted with reckless disregard of the probability of causing injury to Plaintiff and, because said Defendant was guilty of oppressive, fraudulent, and/or malicious conduct, Plaintiff is entitled to an award of exemplary or punitive damages in an amount adequate to deter such conduct in the future, in addition to attorneys' fees and costs.

163.    Defendant's acts alleged herein are malicious, oppressive, despicable, and in conscious disregard of Plaintiff's rights. Upon information and belief, one or more of Defendant's

managing agents committed, authorized, or ratified the wrongful conduct. As such, punitive damages are warranted against Defendants.

## ELEVENTH CLAIM
### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
(Civ. Code § 1714)

(*On behalf of Plaintiff as an individual*)

164.    Plaintiff incorporates in this claim each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

165.    In the alternative, if said conduct of Defendant, and of its agents and employees was not intentional, it was negligent. Plaintiff is thereby entitled to general damages for the negligent infliction of emotional distress

166.    As a direct and proximate result of Defendant's conduct, Plaintiff sustained damages, including but not limited to, loss of earnings and earning potential, opportunities and other benefits of employment and employment opportunities and harm to her reputation, mental anguish, embarrassment, humiliation, and other emotional distress and/or medical and related expenses in an amount to be established at trial. As a result of this wrongful conduct, Plaintiff is entitled to attorneys' fees, costs, and injunctive relief.

167.    Moreover, in that, at all times referenced herein, Defendant intended to cause or acted with reckless disregard of the probability of causing injury to Plaintiff and, because said Defendant was guilty of oppressive, fraudulent, and/or malicious conduct, Plaintiff is entitled to an award of exemplary or punitive damages in an amount adequate to deter such conduct in the future, in addition to attorneys' fees and costs.

168.    Defendant's acts alleged herein are malicious, oppressive, despicable, and in conscious disregard of Plaintiff's rights. Upon information and belief, one or more of Defendant's managing agents committed, authorized, or ratified the wrongful conduct. As such, punitive damages are warranted against Defendants.

///

///

ILG Legal Office, P.C.

Tel: (415) 580-2574 | Email: help@ilglegal.com

ILG Legal Office, P.C.

Tel: (415) 580-2574 | Email: help@ilglegal.com

**TWELFTH CLAIM**

**DISCRIMINATION AND HARASSMENT--TERMINATION**

(California Gov't Code §§ 12940 *et seq.*; *Tameny v. Atlantic Richfield Company*)

(*On behalf of Plaintiff as an individual*)

169.     Plaintiff incorporates in this claim each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

170.     Plaintiff alleges that she lost her job and was terminated because she is female and because she spoke up about discrimination against females.

171.     At all times mentioned herein, Defendant was an employer within the meaning of the California Fair Employment and Housing Act (Cal. Govt. Code §§ 12940 *et seq.*) ("FEHA") and Plaintiff was an employee within the meaning of FEHA. Defendant regularly employed five or more persons or, in the alternative, Defendant is a direct or indirect agent of an employer. *See* Cal. Govt. Code §§ 12926(d) ("'Employer' includes any person regularly employing five or more persons, or any person acting as an agent of an employer, directly or indirectly, the state or any political or civil subdivision of the state, and cities, except as follows: 'Employer' does not include a religious association or corporation not organized for private profit.'" *Id.* This claim is brought pursuant to FEHA, and the corresponding regulations promulgated by the California Department of Fair Employment and Housing. Defendant regularly and systematically does business in the State of California and is subject to suit under FEHA in that Defendant regularly employed five or more persons.

172.     With respect to harassment claims under subdivision (j) of Section 12940, the definition of an "employer" includes "any person regularly employing one or more persons or regularly receiving the services of one or more persons providing services pursuant to a contract, or any person acting as an agent of an employer, directly or indirectly, the state, or any political or civil subdivision of the state, and cities." Gov't Code § 12940(j)(4).

173.     With respect to discrimination, California Government Code section 12940(a) provides that it is an unlawful employment practice:

For an employer, because of the race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, genetic

-31-

ILG Legal Office, P.C.

Tel: (415) 580-2574 | Email: help@ilglegal.com

information, marital status, sex, gender, gender identity, gender expression, age, sexual orientation, or military and veteran status of any person, to refuse to hire or employ the person or to refuse to select the person for a training program leading to employment, or to bar or to discharge the person from employment or from a training program leading to employment, or to discriminate against the person in compensation or in terms, conditions, or privileges of employment.

174.    With respect to harassment, California Government Code section 12940(j)(1) provides:

For an employer, labor organization, employment agency, apprenticeship training program or any training program leading to employment, or any other person, because of race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, genetic information, marital status, sex, gender, gender identity, gender expression, age, sexual orientation, or military and veteran status, to harass an employee, an applicant, an unpaid intern or volunteer, or a person providing services pursuant to a contract. Harassment of an employee, an applicant, an unpaid intern or volunteer, or a person providing services pursuant to a contract by an employee, other than an agent or supervisor, shall be unlawful if the entity, or its agents or supervisors, knows or should have known of this conduct and fails to take immediate and appropriate corrective action. An employer may also be responsible for the acts of nonemployees, with respect to sexual harassment of employees, applicants, unpaid interns or volunteers, or persons providing services pursuant to a contract in the workplace, where the employer, or its agents or supervisors, knows or should have known of the conduct and fails to take immediate and appropriate corrective action. In reviewing cases involving the acts of nonemployees, the extent of the employer's control and any other legal responsibility that the employer may have with respect to the conduct of those nonemployees shall be considered. An entity shall take all reasonable steps to prevent harassment from occurring. Loss of tangible job benefits shall not be necessary in order to establish harassment.

This is a claim for relief arising from Defendant's causing, and its failure to prevent, discrimination and harassment against Plaintiff based on her gender.

175.    According to California Code of Regulations Title 2, section 11029(b) states:

The purpose of the laws against discrimination and harassment in employment because of sex is to eliminate the means by which individuals, by virtue of their sex, gender identity, or gender expression, are treated differently, paid less, treated adversely based on stereotyping, subjected to conduct of a sexual nature, subjected to hostile work environments, or made to suffer other forms of adverse action, and to guarantee that in the future equal employment benefits will be afforded regardless of the individual's sex

176.    As alleged above, Plaintiff was entitled to protection under FEHA because Plaintiff is an employee who has a protected characteristic based on her gender, specifically being female.

177.   As alleged above, Plaintiff was entitled to protection under FEHA because Plaintiff is an employee who has a protected characteristic.

178.   As such, Plaintiff was entitled to FEHA's protection pursuant to California Government Code sections 12940 *et seq.*

179.   Defendant was aware that Plaintiff was an employee who has a protected characteristic and who engaged in protected activity.

180.   Pursuant to California Government Code section 12940(a), Defendant was prohibited from taking any adverse employment action motivated by the fact that an employee has a protected characteristic.

181.   At all times mentioned herein, Plaintiff was qualified for the position she held and was performing competently in the position.

182.   Defendant's discriminatory and harassing actions against Plaintiff, as alleged above, including preventing her from being promoted and her ultimate termination of employment, constituted unlawful discrimination in employment on account of the fact that Plaintiff was an employee that has a protected characteristic and who engaged in protected activity, in violation of California Government Code section 12940.

183.   Plaintiff is informed and believes and, based thereon, alleges that Defendant's conduct, as described herein, was substantially motivated by the fact that Plaintiff has a protected characteristic and that she engaged in protected activity.

184.   As a direct and proximate result of the actions of Defendant, including the discrimination and harassment against Plaintiff as described herein, Plaintiff has suffered and will continue to suffer pain and extreme and severe mental anguish and emotional distress. Plaintiff has further suffered and will continue to suffer a loss of earnings and other employment benefits. Accordingly, Plaintiff is entitled to general compensatory damages in amounts to be proven at trial.

185.   By discriminating against and harassing Plaintiff in violation of Government Code section 12940, Defendant acted willfully, oppressively, maliciously and with conscious disregard for Plaintiff's rights, and with the intent to annoy, harass or injure Plaintiff, in violation of

-33-

California Civil Code section 3294, such that Plaintiff is entitled to recovery of punitive damages in an amount according to proof at trial.

186.    Upon information and belief, one or more of Defendant's managing agents committed, authorized, or ratified the wrongful conduct. As such, punitive damages are warranted against Defendant. Plaintiff seeks her attorneys' fees and costs pursuant to California Government Code section 12965(b).

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff, on behalf of herself and all others similarly situated including the California Class and the Nationwide Class, respectfully prays for the following forms of relief against Sony, as follows:

1.    For penalties, including statutory and civil penalties, pursuant to all provisions of the Labor Code referenced herein which provide for penalties as a result of the conduct alleged herein;

2.    For costs of suit incurred herein and attorneys' fees pursuant to the statutes cited herein;

3.    For compensatory damages;

4.    For general damages in amounts according to proof and in no event in an amount less than the jurisdictional limit of this court;

5.    For special damages according to proof;

6.    For punitive damages where allowed by law;

7.    For an order certifying this action as a class action;

8.    For an order appointing Plaintiff Majo as Class representative, and appointing Plaintiff's counsel as Class counsel;

9.    For all wages due pursuant to California Labor Code §1197.5(h) in an amount to be ascertained at trial;

10.    For liquidated damages pursuant to California Labor Code §1197.5(h);

11.    For prejudgment interest on unpaid wages at a rate of 10% per annum pursuant to

-34-

California Labor Code §1197.5(h) and California Civil Code §§ 3287-3288, and/or any other applicable provision providing for prejudgment interest;

12.     For declaratory relief;

13.     For restitution of all monies due to Plaintiff and Class Members, as well as disgorgement of Sony's profits from its unlawful and/or unfair business practices;

14.     For preliminary and permanent injunctive relief enjoining Sony from violating California Labor Code §1197.5 *et seq.* by paying its female employees lower wage rates than those paid to their male counterparts for substantially similar work; and from engaging in the unfair and unlawful business practices complained of herein;

15.     For reasonable attorneys' fees and costs pursuant to California Labor Code §1197.5(h), California Code of Civil Procedure §1021.5, and/or any other applicable provision providing for attorneys fees and costs;

16.     Acceptance of jurisdiction of this case;

17.     Designation of this action as a collective action on behalf of the Nationwide Class and: i. promptly issuing notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the Nationwide Class, which (a) apprises them of the pendency of this action and (b) permits them to assert timely claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b); and ii. tolling the statute of limitations on the claims of all members of the Nationwide Class from the date the original Complaint was filed until the Class members are provided with reasonable notice of the pendency of this action and a fair opportunity to exercise their right to opt in as Plaintiffs;

18.     Designation of Plaintiff as the representative of the Nationwide Class Members;

19.     A declaratory judgment that the practices complained of therein are unlawful and violate, among other laws, 29 U.S.C. § 206, *et seq.*; Cal. Gov. Code § 12940 *et seq.*; Cal. Gov. Code § 12945.2; Cal. Labor Code section 1197.5 *et seq.*; and Cal. Bus. & Prof. Code § 17200 *et seq.*;

20.     A permanent injunction against Sony and its partners, officers, owners, agents, successors, employees, representatives and any and all persons acting in concert with them, from

ILG Legal Office, P.C.

Tel: (415) 580-2574 | Email: help@ilglegal.com

engaging in any further unlawful practices, policies, customs and usages set forth therein;

21.    An Order requiring Sony to initiate and implement programs that (i) remedy the hostile work environment at Sony; (ii) ensure prompt, remedial action regarding all claims of gender discrimination; and (iii) eliminate the continuing effects of the discrimination and retaliatory practices described therein;

22.    An Order requiring Sony to initiate and implement systems for compensating female employees in a non-discriminatory manner;

23.    An Order directing Sony to adjust the compensation for Plaintiff and the Class Members to the level that they would be enjoying but for Sony's discriminatory policies, practices, and procedures;

24.    An award of back pay, front pay, lost benefits, preferential rights to jobs, and other damages for lost compensation and job benefits suffered by the Plaintiffs, and Class Members;

25.    An award of nominal damages to Plaintiff and Class Members; and

26.    For such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury of all issues triable of right to a jury.

Respectfully submitted,

DATED: November 22, 2021          **ILG Legal Office, P.C.**

Stephen Noel Ilg

Attorneys for Plaintiff and the Plaintiff Class

*Majo v. Sony Interactive Entertainment LLC*
Class and Collective Action Complaint

**ILG Legal Office, P.C.**
Tel: (415) 580-2574 | Email: help@ilglegal.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**ILG Legal Office, P.C.**
Tel: (415) 580-2574 | Email: help@ilglegal.com

**EXHIBIT A**

*Majo v. Sony Interactive Entertainment LLC*
Class and Collective Action Complaint

# 2O-FIRST's 2020
# GENDER BALANCE SCORECARD

**SEPTEMBER 2020**

# Top 14 Global Gaming Companies
## *Please Wait…Gender Balance Loading*

At 20-first we believe the best measure of progress towards gender-balanced businesses is the make-up of Executive top teams rather than Boards. Here we report on the Top 14 Global Gaming companies by revenue.

## Key Findings

Despite making up 46% of all gaming enthusiasts and accounting for over 1 billion gamers around the world, women remain vastly underrepresented in the sector's top Executive Teams. Of 144 executives in the Top 14 companies, 121 are men and only 23 are women. Of the 23 women, the majority (57%) are in line roles, responsible for operational business areas (rather than more traditionally female staff roles).

**A WINNING SCORE:** With women making up 41% of the Executive Team, Google is the only company in the Top 14 to achieve our Balanced ranking - at least proving that gender balance is achievable in the sector.

**EASTERN LAG?** Our research shows a clear geographic split, with the best slots dominated by American companies and the worst reserved for Asian companies. It's not a big surprise to see the Japanese companies lagging, as so many of the country's companies are. But there is less excuse for the Chinese entries as China's tech companies generally have a higher proportion of female executives than their US counterparts.

**SINGLE PLAYER MODE:** Bravo to Warner Bros. Entertainment, the only company in the Top 14 to have a female CEO, Ann Sarnoff. The company also has 4 women in their Executive Team of 9 (31%), with half of these women in line roles.

**TIME TO LEVEL UP:** Five companies have no women on their Executive Teams, including the Chinese giant Tencent. These companies may find it hard to attract top talent in the future and to connect with many potential customers, unless they put in the effort to gender balance.



**Gender Balance of Executive Teams of Top 14 Global Gaming Companies**
**2020**

16%     84%

## Our Rankings

The Top 14 companies on the following pages are segmented into one of five phases:

🟨 **Balanced.** With a maximum of 60% of any gender in top leadership roles, with close to equal contributions, this is the ideal gender-balanced organisation. The gold standard.

🟥 **Critical Mass.** With three or more women on the Leadership Team, their contribution becomes a norm. High top team numbers may promise a strong talent pool coming up.

🟪 **Progressing.** Two voices are stronger than one. With two female voices on the Leadership Team, particularly in line roles, it's less easy, consciously or not, to see them as 'the token woman'.

⬜ **Starting.** One woman on the Leadership Team. A bonus point if she's in a line or significant P&L role. Staff roles (HR, Legal, Communications) are important, but rarely lead to the very top.

⬛ **Asleep.** No women on the Leadership Team, in either staff or line roles. Some companies may have a weak succession pool with little prospect of bringing women on to the top team within 3-5 years.

## Survey Methodology

The data for this survey is based on information provided by companies listed in the Newzoo Top 25 Public Companies by Game Revenues. Executive Team data is taken from websites and transparency reports, as of August 2020. The Executive Team is defined as the CEO and the executives who report directly to them, or as defined by each company. Some companies list a broader group of 'Top Leadership'. Where this is the case, we have reviewed the individuals' profiles and used our best judgement to identify those who report to the CEO, based on job title and role. Each company was given the opportunity to confirm the research for their organisation.

20-first research analyses progress on gender balance in the top companies of a number of industries and countries, as well as across the Top 100 companies of the Fortune Global 500. For more, go to https://20-first.com/thinking







2020 Global Gaming Scorecard: Top 14 Companies 20-FIRST

*Line or operational roles include CEO, CFO, Country Head, Business Unit Head, etc.*
*Staff or support roles include Communications, HR, Legal, IT, Strategy, Public Policy, etc.*

# 2020 Global Gaming Scorecard: Top 14 Companies

*Line or operational roles include CEO, CFO, Country Head, Business Unit Head, etc.*
*Staff or support roles include Communications, HR, Legal, IT, Strategy, Public Policy, etc.*

| Photo | Company | CEO | Rating | Known For | Executive Committee (women) | Executive Committee (men) |
|---|---|---|---|---|---|---|
|  | Google | Sundar Pichai | Balanced | Stadia; Android Mobile Games | 41% | 59% |
|  | Warner Bros. Entertainment Inc | Ann Sarnoff | Critical Mass | LEGO games; Mortal Kombat; Batman games | 31% | 69% |
|  | Apple | Tim Cook | Critical Mass | App Store Games | 25% | 75% |
|  | Electronic Arts | Andrew Wilson | Progressing | FIFA; Battlefield; The Sims | 22% | 78% |
|  | Microsoft | Satya Nadella | Progressing | Halo; Forza; Gears of War | 13% | 87% |
|  | Take-Two Interactive | Strauss Zelnick | Starting | WWE; Grand Theft Auto; Red Dead Redemption | 25% | 75% |
|  | Ubisoft | Yves Guillemot | Starting | Assassin's Creed; Tom Clancy's Rainbow Six; Watchdogs | 25% | 75% |
|  | Activision Blizzard | Bobby Kotick | Starting | Call of Duty; World of Warcraft; Candy Crush | 20% | 80% |
|  | Century Huatong | Wang Ji | Starting | Legend of Mir 2; Maple Story; Fallout Shelter | 13% | 87% |
|  | NetEase | William Lei Ding | Asleep | World of Warcraft; Hearthstone; Overwatch | 0% | 100% |
|  | BANDAI NAMCO Holdings Inc | Mitsuaki Taguchi | Asleep | Tekkan; Cyberpunk; Pac-Man | 0% | 100% |
|  | Nintendo | Shuntaro Furukawa | Asleep | Mario Kart; Legends of Zelda; Animal Crossing | 0% | 100% |
|  | Sony | Kenichiro Yoshida | Asleep | The Last of Us Part II; Gran Turismo; Marvel's Spiderman | 0% | 100% |
|  | Tencent Holdings Ltd. | MA Huateng (Pony Ma) | Asleep | League of Legends; Path of Exile; Clash of Clans | 0% | 100% |

Legend: = Line; = Staff

Info: queries@20-first.com © 20-first 2020 | www.20-first.com

## Who we are

20-first is one of the world's leading global consultancies focused on gender balance as a business and economic opportunity.

We work with many of the best known global companies that seek to move from 20th century mindsets, management styles and marketing approaches into more progressive 21st century forms – and to stay first at the game.

Hence our name. It underlies our purpose, and those of the clients we serve.

**5**
**Sustain the Change**
Keep up the momentum, track progress and reward success

**4**
**Build Gender Bilingual Management Skills**
Equip managers with skills needed to manage across genders

**3**
**Align Leaders**
Get buy-in on why balance is a business opportunity and how to scale it

**2**
**Start Smart**
Launch an initiative with the right people and the right positioning

**1**
**Wake Up**
Engage leaders and managers

### What makes us different

■ **The business imperative**
We help companies to unlock 21st century market and talent opportunities

■ **Focus on gender bilingual leaders**
We equip leaders with a strategic understanding and management competencies to work across genders

■ **Global perspectives**
We are experienced working with global companies across all regions and cultures of the world

**For more information, please contact queries@20-first.com**

| Business Case | Implementation | Strategy | Talent | Leadership |
|---|---|---|---|---|