**ILG Legal Office, P.C.**
Stephen Noel Ilg (SBN 275599)
George L. Lin (SBN 287873)
156 South Spruce Ave., Unit 206A
South San Francisco, CA 94080
Tel:     (415)580-2574
Fax:     (415)735-3454
Email: silg@ilglegal.com
Email: glin@ilglegal.com


Attorneys for Plaintiff Emma Majo

UNITED STATE DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Emma Majo, an individual, | Case No. 3:21-cv-09054-LB |
| Plaintiff, | **CLASS AND COLLECTIVE ACTION** |
| vs. | **PLAINTIFF EMMA MAJO'S OPPOSITION TO DEFENDANT SONY'S MOTION TO DISMISS AND MOTION TO STRIKE** |
| Sony Interactive Entertainment LLC, a California limited liability company, | |
| Defendant. | **JURY TRIAL DEMANDED** |

**ILG Legal Office, P.C.**
Tel: (415) 580-2574 | Email: help@ilglegal.com

**ILG Legal Office, P.C.**

Tel: (415) 580-2574 | Email: help@ilglegal.com

## Table of Contents

I.   INTRODUCTION ............................................................................................. 1

II.  FACTUAL BACKGROUND FOR CLASS ACTION CLAIMS ............................ 2

   A. SONY SYSTEMICALLY TREATS WOMEN DIFFERENTLY THAN MEN ................. 2

   B. SONY'S CLASSWIDE POLICIES AND PRACTICES NEGATIVELY IMPACT WOMEN ................. 4

   C. OTHER CLASS MEMBERS CORROBORATE GENDER BIAS ................................. 6

   D. SONY'S COMPANYWIDE CULTURE REINFORCES SYSTEMIC BIAS AGAINST WOMEN ........... 6

   E. SEVERAL WOMEN DECLARED TO INAPPROPRIATE SEXUAL CONDUCT BY MANAGERS ........ 6

   F. DIMINUTIVE TREATMENT-WOMEN ARE ASSIGNED INFERIOR DUTIES ................................. 7

   G. DIMINUTIVE TREATMENT-WOMEN ARE IGNORED ................................. 7

   H. DIMINUTIVE TREATMENT-STATUS AS A FEMALE IS REFERENCED AS A NEGATIVE ............ 7

   I. DIMINUTIVE TREATMENT-WOMEN ARE GIVEN FEWER RESOURCES ................................. 8

   J. SONY KNOWS ABOUT SYSTEMIC SEXISM BECAUSE MANY WORKERS REPORTED IT .......... 8

   K. WOMEN AT SONY ARE SCARED TO SPEAK UP ABOUT DISCRIMINATION ........................ 10

   L. WOMEN WHO REPORT DISCRIMINATION RISK RETALIATION ................................. 10

   M. GENDER-BIASED POLICIES AND PRACTICES HAVE SURVIVED REORGANIZATIONS ......... 10

   N. AT SONY, VICTIMS GET TARGETED AND ALLEGED HARASSERS GET PROMOTED ............ 11

III. PROPRIETY OF CLASS AND COLLECTIVE ACTION ................................. 11

   A. DISPARATE TREATMENT CLAIMS SATISFY CLASS CERTIFICATION STANDARDS ............... 11

   B. DISPARATE IMPACT CLAIMS WILL ALSO SATISFY CLASS CERTIFICATION STANDARDS ... 13

   C. CERTIFICATION FACTORS ARE SATISFIED ALTHOUGH NO DISCOVERY HAS OCCURRED .. 15

   D. CERTIFICATION SHOULD NOT BE DECIDED BEFORE DISCOVERY BEGINS ........................ 15

   E. NO CONFLICT EXISTS AMONG THE CLASSES ................................. 16

IV.  LEAVE TO AMEND SHOULD BE GIVEN FOR CURABLE DEFICIENCIES ...... 16

V.   EACH CLAIM IS SUFFICIENTLY PLEAD AND, IF NECESSARY, ANY
DEFICIENCIES COULD BE CURED ............................................................ 17

   A. CLAIM 1: FLSA, 29 U.S.C. § 216(B), DENIAL OF EQUAL PAY FOR EQUAL WORK .......... 18

   B. CLAIM 2: DECLARATORY JUDGMENT, 28 U.S.C. § 2201 ................................. 19

   C. CLAIM 3: CALIFORNIA EQUAL PAY ACT, CAL. LABOR CODE §§1197.5, 1194.5 .............. 20

   D. CLAIM 4: FEHA, UNEQUAL PAY & FAILURE TO PROMOTE, GOV'T CODE §§ 12940 ....... 21

   E. CLAIM 5: FEHA, FAILURE TO PREVENT AND INVESTIGATE, GOV'T CODE §§ 12940 ........ 22

   F. CLAIM 6: FAILURE TO PAY FINAL WAGES, CAL. LABOR CODE §§ 201-203 ..................... 22

   G. CLAIM 7: UNFAIR COMPETITION, CAL. BUS. & CAL. GOV'T CODE §§ 12940 .................. 22

   H. CLAIM 8: PAGA, CAL. LAB. CODE § 2698 ................................. 22

   I. CLAIM 9: WRONGFUL TERMINATION-PUBLIC POLICY, *TAMENY* ................................. 23

   J. CLAIM 10: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS ................................. 23

   K. CLAIM 11: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS, CIV. CODE § 1714 ......... 24

   L. CLAIM 12: DISCRIMINATION AND HARASSMENT, CAL. GOV'T CODE §§ 12940 ............... 25

   M. CLAIM 13: RETALIATION, CAL. LAB. CODE §§ 232.5, 1102.5 ................................. 25

VI.  CONCLUSION ............................................................................................. 25

**ILG Legal Office, P.C.**
Tel: (415) 580-2574 | Email: help@ilglegal.com

1

2

## **Table of Authorities**

**Cases**

*Brazil v. Dell Inc.*, 2008 U.S. Dist. LEXIS 95348, *9 (N.D.Cal. Nov. 14, 2008) ...................... 16

*General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 160 (1982) ............................... 16

*Int'l Broth. of Teamsters v. United States*, 431 U.S. 324 (1977) ................................................ 14

*Schreiber Distributing Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1401 (9th Cir. 1986)
............................................................................................................................................... 17

*Staton v. Boeing Co.* 327 F.3d 938, 958 (9th Cir. 2003) ........................................................... 16

*Thorpe v. Abbott Laboratories*, 534 F.Supp.2d 1120, 1125 (N.D.Cal. 2008) ........................... 16

*Wagner v. Taylor*, 836 F.2d 578 (D.C. Cir. 1987) ..................................................................... 16

Watson v. Fort Worth Bank & Trust, 487 U.S. 977, 990–91, 108 S.Ct. 2777, 101 L.Ed.2d 827
(1988) ..................................................................................................................................... 14

*Achal v. Gate Gourmet, Inc.*, 114 F. Supp. 3d 781, 819 (N.D. Cal. 2015) ................................ 19

*Alcorn v. Anbro Engineering, Inc.*, 2 Cal. 3d 493, 499 (1970) ................................................... 23

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ....................................................................... 17

*Bush v. Vaco Tech. Servs., LLC*, No. 17-CV-05605-BLF, 2019 WL 3290654, at *1 (N.D. Cal.
July 22, 2019) ........................................................................................................................ 19

*Cabesuela v. Browning-Ferris Indus. of California, Inc.*, 68 Cal. App. 4th 101, 113 (1998) ..... 24

*Chan v. Canadian Standards Ass'n*, No. SACV192162JVSJDE, 2020 WL 2496174, at *2 (C.D.
Cal. Mar. 16, 2020). ............................................................................................................. 25

*Cochran v. Cochran*, 65 Cal. App. 4th 488, 494 (1998) ............................................................ 23

*Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) ........................................................................... 18

*Duran v. U.S. Bank Nat'l Ass'n*, 59 Cal. 4th 1, 28-29 (2014) .................................................... 20

*Forman v. Davis*, 371 U.S. 178, 182 (1962) .............................................................................. 17

*Gillian v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997) .................................. 17

*Grotz v. Kaiser Found. Hosps.*, No. C-12-3539 EMC, 2012 WL 5350254, at *10 (N.D. Cal. Oct.
29, 2012) ................................................................................................................................ 24

*Hall v. City of Santa Barbara*, 833 F.2d 1270, 1274 (9th Cir. 1986) ........................................ 17

ILG Legal Office, P.C.

Tel: (415) 580-2574 | Email: help@ilglegal.com

*Jones v. Dep't of Corr. & Rehab.*, 152 Cal. App. 4th 1367, 1380 (2007).....................................23

*Kassman v. KPMG LLP*, 416 F. Supp. 3d 252, 268 (S.D.N.Y. 2018).........................................20

*Kelly-Zurian*, 22 Cal. App. 4th at 409 (1994)...........................................................................22

*Light v. California Dep't of Parks & Recreation*, 14 Cal. App. 5th 75, 101, (2017)...................24

*Lyle v. Warner Bros. Television Prods.*, 38 Cal. 4th 264, 277-79 (2006) ..................................21

*Marlene F. v. Affiliated Psychiatric Med. Clinic, Inc.*, 48 Cal. 3d 583, 592 (1989) ..................24

*O'Reilly v. Daugherty Sys., Inc.,* No. 4:18-CV-01283 SRC, 2021 WL 4514293, at *1 (E.D. Mo.
Sept. 30, 2021) .............................................................................................................................20

*Rivera v. Saul Chevrolet, Inc.*, No. 16-CV-05966-LHK, 2017 WL 3267540, at *2 (N.D. Cal.
July 31, 2017)................................................................................................................................19

*U.S. v. City of Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981) ..............................................17

*United States v. State of Wash.*, 759 F.2d 1353, 1356 (9th Cir. 1985) .......................................19

*Wade v. Morton Bldgs., Inc.*, No. 09-1225, 2010 WL 378508, at *8 (C.D. Ill. Jan. 27, 2010)...21

*Walsh v. Nevada Dept. of Human Resources*, 471 F.3d 1033, 1036 (9th Cir 2006) ..................18

*Washington Cty. v. Gunther*, 452 U.S. 161, 165 (1981).............................................................18

**Statutes**

Fed. R. Civ. P. 15..........................................................................................................................17

Fed. R. Civ. P. 8............................................................................................................................18

-iv-

ILG Legal Office, P.C.

Tel: (415) 580-2574 | Email: help@ilglegal.com

## PLAINTIFF EMMA MAJO'S OPPOSITION

### I.    INTRODUCTION

Plaintiff Emma Majo hereby demonstrates that sexual harassment and discrimination occurred on a classwide basis at Sony, and that Sony was properly put on notice of these claims through the pleadings and through years of reports from women working at Sony just like Emma Majo. Sony asks this Court to dismiss Plaintiff Emma Majo's class and individual claims "without leave to amend" (Motion [Dkt. 24 at 7:21-24; 10:22-26; and 19:25-26) based on Sony's claim that Emma Majo "admits she has no knowledge of how SIE conducts its business in locations outside her own, and thus cannot credibly allege she is similarly situated to the class she seeks to represent." (Def. MTD at 10:22-26). *What is Sony's basis for this statement that Emma Majo admits she has no knowledge of SIE's business outsider her own location?* **Sony does not cite any evidence, nor does it cite any pleadings.** Sony's false argument that discrimination did not occur reflects Sony's approach to reports of sexual harassment and gender discrimination it received for many years. Sony ignores explicit reports of sexual harassment and gender discrimination. Sony attacks the individuals that speak up about unlawful mistreatment of women, and Sony tries to capitalize on self-made virtual reality by publishing fiction and seeing if others will notice.

***Sony needs a reality check.*** The allegations and evidence about Emma Majo are as follows: In May 2021, Emma Majo was scheduled to be interviewed by an investigator hired by Sony. In advance of the meeting, she sent an email stating, "In preparation for what I assume the topic of this call is, I have attached my written statement on sexism I have experienced while at SIE." (Ilg Decl., Exh. 10.) Emma Majo had hired her current counsel to assist with the interview. Although Emma Majo and her counsel agreed to participate in the scheduled interview and agreed to reschedule if Sony preferred, Sony's investigator never actually conducted an interview—this is after Emma Majo submitted a signed statement "on sexism [] experienced while at SIE." Instead of conducting that interview, Sony terminated Emma Majo soon afterwards using a basis Emma Majo can already prove was pretext.

***Many women already declared that they reported sexual harassment and discrimination and that Sony is aware of companywide mistreatment of women.*** (*See* Ilg Decl., Exhs. 1-9.)

ILG Legal Office, P.C.

Tel: (415) 580-2574 | Email: help@ilglegal.com

The putative class claims will determine whether the group of Sony workers is more similar to cases like *Dukes v. Wal-Mart*—denying certification—or to cases like *Ellis v. Costco*—granting certification. *See Ellis v. Costco Wholesale Corp.,* 285 F.R.D. 492 (N.D. Cal. 2012) (J. E. Chen). In *Ellis v. Costco*, this Court certified gender discrimination claims for reasons similar to the facts in this case: smaller group than *Dukes*, unfettered discretion for promotion decisions, combined with a companywide culture that controls how that discretion is exercised.

Sony's request to end this putative class action without any discovery should be rejected. because the allegations sufficiently put Sony on notice of the claims at issue. In the alternative, if the Court finds any deficiency in one or more claims, Plaintiff should be allowed leave to amend.

## II.    FACTUAL BACKGROUND FOR CLASS ACTION CLAIMS

The pre-discovery declarations obtained thus far confirm classwide policies and practices similar to the factual description of *Ellis v. Costco*, as discussed in Section I above.

### A.    Sony Systemically Treats Women Differently Than Men

#### 1.    Dossier Policy Creates Different Treatment for In-Cycle Promotions

Marie Harrington worked for SIE for 17 years. (Exh. 1, Harrington Decl. ¶ 1.) She was the Chief of Staff to the Senior VP of Engineering George Cacciopo. (Id. at ¶ 3.) When she left Sony, she reported that systemic sexism was the reason she was resigning. (Id. at ¶ 4 ("When I left Sony, I told the SVP and the Director of HR Rachel Ghadban in the Rancho Bernardo office that the reason I was leaving was systemic sexism against females.").)  As the Chief of Staff, Marie Harrington personally observed policies and practices that discriminated against women such as "Calibration Sessions" where the purpose is to discuss candidates for promotion; however, Sony's companywide practice was that all men being considered have a profile prepared for them which is called a "dossier" whereas only about half of women being considered have a dossier prepared. (Harrington Decl. ¶¶ 8-9.)  This practice is companywide as evidenced by the fact that Human Resources was present during the discussions but did not object to the missing dossiers for the women. (Harrington Decl. ¶ 9.)

#### 2.    Separate Performance Criteria for Separate Sexes

Sony's practices regarding promotion also directly discriminate against women because

-2-

ILG Legal Office, P.C.

Tel: (415) 580-2574 | Email: help@ilglegal.com

family status is considered with respect to women who may get promoted but is not considered for men. (Harrington Decl. ¶ 9.) Sony lowers numerical ratings if a woman gets pregnant and takes maternity leave. (Exh. 4, Johnson Decl. pp. 1, 7; Jane Doe Decl. ¶ 2.) Family status is part of job performance for women but not for men. (Jane Doe Decl. ¶ 14.)

Aggression is considered acceptable or positive for men but is a negative factor for women. (Harrington Decl. ¶ 18.)   Men can be "emotionally violent" towards women and can rise through the ranks. (Harrington Decl. ¶ 18.) On the contrary, women are deemed too aggressive for innocuous behavior like asking a male manager to schedule a meeting with her instead of contacting the male manager's assistant to schedule. (Tieu Decl. ¶ 10.)

When male employees underperform, women are blamed. Even if the male responsible for the project speaks up to correct the unfair criticism, Sony managers continue to blame the female worker. (Johnson Decl. p. 3.)

Women are told that they cannot get promoted if they have a non-native accent, yet men are not held to that standard. (Carpenter Decl. ¶ 13.) Women are criticized for issues unrelated to performance such as unspecified body language issues. (Tieu Decl. ¶ 8.)

### 3.     Current Job Titles Is a Factor In Promotions Instead of Performance

"HR and managers also often say a person cannot be promoted because they do not currently hold a certain specific job title. I believe SIE makes it harder for females to get promoted, and one way it does so is by looking at current job titles and deciding a person isn't qualified for a certain job because of her current job title, without a real examination of her skills." (Majo Decl. ¶ 13.) Even when a woman is already performing the management job duties, Sony refuses to award the actual job title. (Majo Decl. ¶ 7.)

### 4.     Separate Policies for Separate Sexes

Emma Majo was demoted when a VP claimed that he did not have time to handle as individual subordinates, but in actuality he dropped his female subordinate but kept his male subordinates. (Majo Decl. ¶ 6.)

### 5.     Separate Educational Requirements for Separate Sexes

Angelica Advincula has worked for Sony since 2007 and still works there at the San Mateo

-3-

ILG Legal Office, P.C.

Tel: (415) 580-2574 | Email: help@ilglegal.com

office. (Exh. 2, Advincula Decl. ¶¶ 1-2.) She was told that she could not earn any promotion. (Id. at ¶ 4.) She was told that a Master's Degree was required to earn another promotion. (Id. at ¶ 5.) Yet when Sony posted the job ad for the position it stated that only a Bachelor's Degree was required. (Id. at ¶¶ 5-8; see also Exhs. A and B thereto.)

6.      Gender Bias in Off-Cycle Promotions:

"I believe there is widespread favoritism towards males at Sony.  My role oversees who gets mid-year promotions …. I have noticed that male employees are advanced through off cycle promotions more often than female employees." (Advincula Decl. ¶¶ 9-10.)  "SIE sometimes promotes people 'in cycle' (meaning around the time of annual performance reviews) and sometimes 'out of cycle.' The number of men promoted out of cycle is notable. Every 'out of cycle' promotion I know of was for a male. This indicates that at SIE there are separate processes for men vs. women to get promoted." (Majo Decl. ¶ 12.)

**B.      Sony's Classwide Policies and Practices Negatively Impact Women**

1.      Sony Refuses to Specify the Criteria for Promotion

"I was a Senior Director for five years. On several occasions, I asked how to prepare myself for a promotion to Vice President. I asked if there was anything I could do to work towards becoming a Vice President. I could never get any guidance on what projects, scope, skills, or attributes that would help to develop my leadership potential." (Harrington Decl. ¶ 17.)  "I worked my way up to Project Manager; during a recent review, I said I'd like to stay and grow. I pointed out that I had been with the company and within the same department for a long time. I asked what growth looks like, meaning how could I earn a promotion. I was told there is no possibility of further advancement for me. I was told, 'This is it for you.'" (Advincula Decl. ¶ 4.)  "When I tried to get promoted by asking my manager at the time, especially during reviews, I was always given vague reasons about why I could not get promoted." (Carpenter Decl. ¶¶ 3, 6.) "Towards the end of my employment, it became ironic when I would speak to my manager about how to get promoted because my manager at the end was one of my peers earlier in my employment. While I was told I could not earn a promotion for vague reasons, he was given the opportunity to become a high-level manager and became my boss." (Carpenter Decl. ¶ 9.)

ILG Legal Office, P.C.

Tel: (415) 580-2574 | Email: help@ilglegal.com

Sony's refusal to specify criteria for promotion allows Sony's managers to invent any reason desired for why an individual was not promoted. Callista Tieu was criticized during a review because of her "body language and facial expressions." (Tieu Decl. ¶ 11.) When the performance review discussed her actual performance, her manager stated she was doing very well. Nonetheless, she received a 3 out of 5 on her annual review which impacted her bonus and merit. (Tieu Decl. ¶ 11.) She asked what she could do to improve, and her manager told her to take training classes (id. at 11.); she began taking courses during her free time in the hopes of earning a promotion (id. at 12). When she spoke to her manager again, he said she was not taking the right courses. (Id. at 13.) She asked a training coordinator to help select courses; her manager declined them all and said she was not picking the courses but would not specify what the "right courses" were. (Id. at 14.) This review Callista received a 2 out of 5, her lowest review ever; typically a score of 2 would trigger a Performance Improvement Plan, but her manager said she did not need one. (Id. at 14.)  Plaintiff Emma Majo echoes her co-workers' statements.  (Majo Decl. ¶¶ 4-6.)  "I observed female employees get passed up for job promotions which were given to male employees where, in my opinion, the female employee was at least as qualified as the male who was actually promoted." (Jen R. Decl. ¶ 4.)  "I kept asking my manager if there were any concerns about my performance, to which my manager said I'm doing a great job. ….. I had been proactive on asking what steps I could take to get promoted. I repeatedly asked what I could do until finally my manager provided an informal document with a list of actions I should take. I followed the steps. I even asked for a 360 review from my peers because I know I have worked well with them. Even after following all actions suggested by my manager, I still was unable to earn a promotion." (Jane Doe Decl. ¶ 11.)

    2.     Women Must Follow Different Protocols Than Men

"I was told by my manager that I was intimidating when I walked into bays and interacted with testers and that they felt uncomfortable. ….. The manager suggested that either I or the test go solo. This didn't make much sense to me because the whole point was to train my tester to interact with others so they aren't so uncomfortable. Having either myself go alone, or sending my tester alone, doesn't help my tester. My fellow male leads never received this advice." (Tieu

ILG Legal Office, P.C.

Tel: (415) 580-2574 | Email: help@ilglegal.com

Decl. ¶ 5.)  Women must follow different rules at Sony. "SIE has managers (e.g. Yu Sugita) who will not be alone in a room with a female with the door closed…." (Majo Decl. ¶ 3.)

### C.   Other Class Members Corroborate Gender Bias

Discovery has not yet started, but many women have already come forward and stood up to declare to specific unlawful mistreatment. "I left Sony for several reasons. There were 4 other women I worked directly with, 3 in Product Management and 1 in Business Management. All left Sony for similar reasons related to sexual discrimination, sexual harassment, and not being able to earn a promotion." (Carpenter Decl. ¶ 7.)  (*See* Exh. 3, Chin Decl. ¶ 2, Advincula ¶¶ 9, 11, Carpenter Decl. ¶ 10, Tieu Decl. ¶ 16; Jane Doe Decl. ¶ 2.)

### D.   Sony's Companywide Culture Reinforces Systemic Bias Against Women

"In July 2019, during a site leadership meeting in the Rancho Bernardo office where I brought our new Diversity Director and invited Sony Electronic's Diversity Director, Jason Harkins, Chief Security Officer stated, 'I don't like talking about diversity because these conversations always make me feel icky.'" (Harrington Decl. ¶ 6.)

"I attended another meeting that was supposed to be about gender equality. It was a panel, but there were five males and zero females on the panel. The panel said they tried to include a female, but they could not get her on the plane to attend the meeting. As a result, the meeting about gender equality had no female panel members." (Jen R. Decl. ¶ 5.)

### E.   Several Women Declared to Inappropriate Sexual Conduct by Managers

"Sony often had offsite events where people stayed at a hotel. …. One of the Senior Managers of a different team tried to grab my breast. Luckily, a male co-worker saw it and stepped in to stop it then helped me leave." (Carpenter Decl. ¶ 12.)  One woman was warned by a co-worker that a lead was overheard talking about how he was going to try to "hit that," which the co-workers laughed about; that lead tried to invite himself to the female employee's room, then after being rebuked he invited the woman to his room if she changed her mind. (Callista Tieu Decl. ¶ 2.) "In 2011, the VP of Engineering Jacob Shen asked me out on a date to a restaurant in Little Italy in San Diego. I rejected the advance. I heard several other employees report similar things by the same manager, Jacob Shen. For instance, the same VP of Engineering asked a female

**ILG Legal Office, P.C.**

Tel: (415) 580-2574 | Email: help@ilglegal.com

co-worker out to dinner on several occasions. She was very uncomfortable and we strategized on how she might avoid him in the future." (Harrington Decl. ¶¶ 23-24.) Later Sony began recruiting interns and women were forced to create plans to protect interns from inappropriate attention from managers. (Harrington Decl. ¶ 25.)

**F.   Diminutive Treatment-Women Are Assigned Inferior Duties**

"I was in a large Engineering leadership meeting with many employees below me on the hierarchy. I was the only woman in the room, and I was asked to take people's coffee orders. It was very demeaning to be asked to wait on co-workers that included multiple male employees that were lower in the hierarchy." (Harrington Decl. ¶ 13.) "My co-workers and I consistently saw that males were given opportunities that females were not given." (Carpenter Decl. ¶ 8.)

**G.   Diminutive Treatment-Women Are Ignored**

Women are ignored during meetings to such an extreme that multiple women have already reported that the only way to have their ideas heard and respected is to filter the idea through a man or get a male co-worker's support in advance. (Harrington Decl. ¶ 12.) (*See also* Johnson Decl. pp. 1-2.) When the female employee tried to speak up, the male colleagues continued to ignore and interrupt the female engineer which devolved into an argument. (Johnson Decl. pp. 1-2.) One of the leaders, said, "I find that in general, women can't take criticism." (Id. at p. 2.)

"[I]f I went into a room with Sug [Yu Sugita] and a male colleague then Sugi would only speak to the male colleague. It would be as if I was not even in the room. After a while, I realized that if I really wanted something done, I needed to send the request through a male because if I communicated directly to Sugi the request would be ignored." (Majo Decl. ¶ 3.)  Others report the same. (Exh. 8, Jen R. Decl. ¶ 3.)   Women reported these issues to management.  (Harrington Decl. ¶ 11.) This occurred with women during meetings but not men. (Harrington Decl. ¶ 15.)

**H.  Diminutive Treatment-Status as a Female Is Referenced as a Negative**

"During group lunch, everyone was talking about their aspirations. I mentioned climbing the ladder in my career, and needed to work harder to get a promotion. Vijay Viswanathan [then-Sr. Director, now-VP] said 'you just need to marry rich.'"  (Chin Decl. ¶¶ 3-5.)

"[Redacted] also routinely called my male boss, 'Marsha' when he was displeased with

him. He would call other men by feminine versions of their names as well, to insult them. On the other hand, when he was impressed that I had managed out an underperformer on my team, he said, "You're the only one with the balls to do it," There was a clear indication that positive actions were male and negative actions were female." (Harrington Decl. ¶ 27.)   "I was told directly by Suresh Bathini, VP Engineering, 'You don't know anything about security, so you shouldn't speak.' At the time, I was managing [Redacted], Principal Security Architect at SIE as well as a team of Security Program Managers. Suresh did not make this kind of comment to any male in the room." (Harrington Decl. ¶ 14.) "Gender-biased comments suggesting that females are less intelligent than males were common." (Carpenter Decl. ¶ 11.)  "I have also personally heard managers make gender-biased comments about female workers. (Majo Decl. ¶ 8.)

### I.      Diminutive Treatment-Women are Given Fewer Resources

"I was hired as a full-time employee in 2010. When I started, full-time employees were given offices. I was not given an office. A year later, there was a wave of new hires on my team. The new hires were all men and were all being given offices. I was not given an office until I complained that the male new hires were given offices while was not. Finally, after I complained, I was given an office to share with another worker." (Tieu Decl. ¶ 4.)

### J.      Sony Knows About Systemic Sexism Because Many Workers Reported It

Sony hired Deloitte to study whether there were overlapping functions between departments. "Deloitte found out that there's a great imbalance in terms of female vs males in terms of employee distribution, and very low % of managers/leadership in both teams. Female employee and management % is much lower compared to other peers, and also low (not the lowest) within SIE. Steve Mourton, the VP of DSO mentioned that this is a problem but didn't disclose the report details to the team members." (Chin Decl. ¶ 10.)

When site leader Kara Johnson quit in 2021, she "wrote up a document on my experiences as the Site Lead and shared it with the Women@PS Rancho Bernardo board members on [her] last day at SIE (January 15, 2021." (Johnson Decl. pp. 3-4.) She saved the letter as a shareable document in a folder owned by the Women@PS Rancho Bernardo group. (Johnson Decl. p. 4.) "As I write this (Jan 14, 2021), my last day at SIE is tomorrow. I'm the 11th woman to leave the

ILG Legal Office, P.C.

Tel: (415) 580-2574 | Email: help@ilglegal.com

Rancho Bernardo office in the last 4 months." (Johnson Decl. p. 4.) "Nothing that I write here will be news to my Director, my VP, my HR partner, or any others I've spoken with since I submit my resignation." (Johnson Decl. p. 4.)

"During my time as the Site Lead, various women approached me to individually share their experiences. Some of the stories were positive…. Other times the stories stemmed from frustration over specific incidents. The examples clearly indicated toxic environments: inappropriate comments, retaliatory behavior, pay discrepancy, and discrimination for being pregnant." (Johnson Decl. pp. 4-5.)  Women reported these problems through various resources, but their complaints were not handled properly. (Johnson Decl. p. 5)

In the Summer of 2020, "Women@PS leads from across all sites participated in a conversation with Christina Hanna, Workforce & Community Engagement Leader....Other leaders brought up general examples of situations in their sites that involved sexual harassment and other unacceptable behavior." (Johnson Decl. pp. 5-6.)  Sony managers have admitted that Sony knows women are paid less than men. "A Women@PS member told me that Ted [Schraven, VP of Information Technology] launched an investigation and subsequent initiative to address unequal pay issues identified in IT." (Johnson Decl. p. 6.) Kara Johnson informed the "Women@PS-RB board about the conversation." (Johnson Decl. p. 6.)   An HR employee named Rachel Ghadban "explained that there is a Task Force working to take action on the alarming number of women who left the company in a short period." (Johnson Decl. p. 6.)

"SIE admitted they noticed females have been leaving the company far more than men. SIE decided to conduct a listening session and invited only females so the females could explain what the problems were. Expecting a marginalized group to "fix the problem" is not only offensive, it's purely performative. If marginalized people could change the status quo they would not be marginalized." (Majo Decl. ¶ 9.)

On May 13, 2018, Marie Harrington sent an email to one of the Vice Presidents reiterating previous reports about inappropriate male behavior. "As we discussed on Friday and on many other days, read Dan Myers, Jeff Ludwig, or any of the other man you and I have discussed over the past many months into this article. There is very little difference in the atmosphere. Can we

ILG Legal Office, P.C.

Tel: (415) 580-2574 | Email: help@ilglegal.com

address this before PlayStation has its own national news article?" (Harrington Decl. ¶ 18.)

"Dan Myers is emotionally violent . . . and you know it. People are beyond raising this issue to HR anymore because it appears to be futile. In fact, he is rewarded with additional scope. Well after his continuous, egregious behavior was reported to HR and senior executives, Dan's scope was expanded to include Commerce and A&I." (Harrington Decl. ¶ 18.)

### K.    Women At Sony Are Scared To Speak Up About Discrimination

A Senior Director of Product Management told Marie Harrington, "Thank you for taking up the torch. I don't want to impact the trajectory of my career and I know how stuff works. Nothing will change. I will talk to HR, but I won't give specifics because I will suffer retribution." (Harrington Decl. ¶ 18.)

### L.    Women Who Report Discrimination Risk Retaliation

Emma Majo. Msg to investigator plus declaration with additional details in signed declaration. Investigator for Sony receives written report from current employee about gender discrimination and never contacts Emma Majo to investigate. Instead, a few months later, Emma Majo is terminated which Sony claims was because her position was being dissolved. However, soon afterwards, Emma Majo saw a job ad published by Sony to fill the position it said had been dissolved. (*See* Ilg Decl., Exhs. 11, 12, and 13.)

### M    Gender-Biased Policies and Practices Have Survived Reorganizations

SIE was split off from Sony Online Entertainment. (Harrington Decl. ¶ 29.)   "Several leaders on that Steering (like Enrico Bernardo and Lee Pedlow) stated that I should be promoted and the only reason I wasn't was because I was female." (Harrington Decl. ¶ 20.)  SIE's precursor entity was also pervaded by sexual harassment and gender discrimination. Women were tricked into going on a date with a manager. (Harrington Decl. ¶ 29.)  "Also while at SOE, [Redacted], the head of Finance, talked to me about his wife's 'boob job' and asked me if my husband would like me to have a 'boob job' and what size he thought I should get." (Harrington Decl. ¶ 30.)   "At SOE, I also received an email from an engineer telling me that I shouldn't wear a skirt to work anymore because it was distracting to him. Behavior like this was common towards female employees at Sony entities." (Harrington Decl. ¶ 31.) "At SOE, male engineers regularly went to

strip clubs at lunch and shared pornography at work." (Harrington Decl. ¶32.)

"Under [Redacted] leadership, the sexism was so rampant I can't catalog it all: men were ranking their female colleagues on hotness levels; [Redacted], Director of Product Management, was routinely admonished by HR to act appropriately; there were email distribution lists for filthy jokes and images of women, the 4chan message board was used throughout the work day to further share offensive images of women, and on and on." (Harrington Decl. ¶ 28.)

### N.   At Sony, Victims Get Targeted and Alleged Harassers Get Promoted

Ashley Chin was working for Vijay Viswanathan who was a Senior Director at the time but was subsequently promoted to Vice President. When Ashley discussed her desire to get promoted Viswanathan said, "You just need to marry rich." (Chin Decl. ¶¶ 3-5.) When Ashley changed teams to get away from her sexist manager, Viswanathan went out of his way to try to tarnish Ashley's reputation with her new team. (Chin Decl. ¶ 6.) Ashley and others raised concerns about the sexist manager to Human Resources: "My supervisor Deirdre and I raised our concerns about Vijay's hostility towards female employees to HR, and there were other 3 female employees who became the witnesses too. …. In addition, Vijay and Gabor always deprioritized Catherine's data request to the team, and continuing saying that her requests are dumb/stupid, so that the team shouldn't work on her stuffs. (VP) Steve Mourton, who is Vijay's supervisor informed him that there were HR complaints about him being hostile towards female employees." (Chin Decl. ¶ 8.) The same manager who was reported to be treating women differently and negatively was moved up the hierarchy. "I heard HR hired a 3rd party company as his career coach. 18 months later, Vijay got promoted to be the VP and continued to report to Steve." (Chin Decl. ¶ 9.)

## III.   PROPRIETY OF CLASS AND COLLECTIVE ACTION

### A.  Disparate Treatment Claims Will Satisfy Class Certification Standards

Plaintiff Emma Majo disparate treatment claims can satisfy the class certification standards as set forth in cases like *Ellis v. Costco.*  In *Ellis v. Costco* certification was granted as to Plaintiffs' disparate treatment claim when this Court concluded Plaintiffs have provided "significant proof" that the defendant operates under a general policy of discrimination and that management utilizes a "common mode of exercising discretion," and Plaintiffs therefore satisfied

ILG Legal Office, P.C.

Tel: (415) 580-2574 | Email: help@ilglegal.com

ILG Legal Office, P.C.

Tel: (415) 580-2574 | Email: help@ilglegal.com

the standard for certification under Rule 23(a) as described in *Dukes*, 131 S.Ct. at 2553, 2554. Plaintiffs produced "significant proof" that "the entire class was subject to the same allegedly discriminatory practice [s]." *Ellis* II, 657 F.3d at 983.  Plaintiffs provided evidence that (1) Costco does not use written procedures for selecting promotion candidates *Ellis*, 285 F.R.D. at 511-12, (2) Top management's involvement in the promotion process is also consistent, and pervasive, classwide. *Ellis*, 285 F.R.D. at 511-12, (3) the company uses a "promotables" list, generated and maintained at the regional level and reviewed at higher executive levels, as the pool from which candidates are chosen *Ellis*, 285 F.R.D. at 512, and (4) The company's actions demonstrate that "Costco's senior management had knowledge of the gender disparity in the AGM and GM promotion processes and treated this disparity as a company-wide issue." *Ellis*, 285 F.R.D. at 515.

The most important reason *Ellis* was certified is that the plaintiffs identified a specific employment practices Costco implements companywide under the influence and control of top management. Unlike in *Dukes*, which the Supreme Court concluded merely identified the delegation of discretion (i.e., the absence of a policy), in *Ellis*, plaintiffs identify specific practices and a common mode of guided discretion directed from the top levels of the company. *Cf.* Dukes, 131 S.Ct. at 2555. It is this "common direction" and the identification of specific practices (other than the mere general delegation of authority), in addition to the smaller size and scope of the class, that separated *Ellis* from *Dukes*. *Ellis*, 285 F.R.D. at 507, 509, 516-18.

Given the extensive involvement by senior management in the promotion process for these positions described above, Plaintiffs have produced significant and persuasive evidence of a "common mode of exercising discretion that pervades the entire company." Ellis, 285 F.R.D. at 518 (Citing Dukes, 131 S.Ct. at 2554–55.)

Evidence obtained before any formal discovery has begun already demonstrates the same factual circumstances exist in this case as those cited by Judge Chen in certifying *Ellis v. Costco*.

(1) No Written Procedures Governing Promotions (*Ellis*, 285 F.R.D. at 511-12): Emma Majo sufficiently alleged that Sony lacks written procedures to govern promotions. (FAC ¶¶ 16, 69, 74.) Additional facts can be plead if needed as shown in Sections II.B above.

(2) Upper Management Involvement in Promotion Decisions (*Ellis*, 285 F.R.D. at 511-

-12-

ILG Legal Office, P.C.

Tel: (415) 580-2574 | Email: help@ilglegal.com

12): Emma Majo sufficiently alleged that Sony's upper management decisions are involved in promotion decisions. "Discriminatory employment practices, policies, and procedures are centrally established and implemented at the highest levels of Sony." (FAC ¶ 19.) Additional facts can be plead if needed as shown in Sections II.A, II.B, II.J, II.M above.

(3) "Promotables" List of Potential Candidates (*Ellis*, 285 F.R.D. at 512): Emma Majo sufficiently alleged that Sony uses predetermined factors—other than performance—to decide who is eligible for a promotion. (FAC ¶ 76.). Additional facts can be plead if needed as shown in Sections II.A above.

(4) Senior Management's Awareness of Gender Disparity in Promotion Process (*Ellis*, 285 F.R.D. at 515): Emma Majo sufficiently alleged that Sony's management is aware of gender disparity in the promotion process. (FAC ¶¶ 14-15, 19.) Additional facts can be plead if needed as shown in Sections II.J, II.D, II.N.

(5) Classwide Practices (*Ellis*, 285 F.R.D. at 515): Emma Majo sufficiently alleged that classwide policies and practices institutionalize gender discrimination and harm women at Sony. (FAC ¶¶ 19-21.). Additional facts can be plead if needed as shown in Sections II.A, II.B, II.C.

(6) Small Proposed Class Size Compared to Dukes' 1,500,000 Member-Class: Existing allegations suffice to put Sony on notice of the claims. Emma Majo sufficiently alleged that numerosity is satisfied. Discovery will likely show that the class size is very small compared to the proposed class in *Dukes.* However, discovery has yet to begin.

**B.  Disparate Impact Claims Will Also Satisfy Class Certification Standards**

Plaintiff Emma Majo's disparate impact claims can satisfy the class certification standards. In *Ellis v. Costco*, this Court held that commonality was even clearer as to the disparate impact claim because plaintiffs have identified specific employment practices they allege have caused the gender disparity in promotions. Plaintiffs identified such employment practices within Costco's promotion system including, *inter alia*, (1) a tap-on-the-shoulder appointment process (without an application or interview), (2) promotion exclusively from within, (3) a requirement of MM experience (for AGM) and AGM experience (for GM), (4) reliance on unwritten and informal evaluation of candidates, (5) reliance on promotable lists of desired candidates. In *Ellis*

ILG Legal Office, P.C.

Tel: (415) 580-2574 | Email: help@ilglegal.com

*v. Costco,* Plaintiffs' argument—that such companywide practices lead to disparate outcomes—is a common question subject to classwide proof and rebuttal. *Ellis*, 285 F.R.D. at 531.

As the Supreme Court reaffirmed in *Dukes*, pattern-or-practice cases alleging disparate treatment under Title VII typically follow a bifurcated, burden-shifting structure laid out by *Int'l Broth. of Teamsters v. United States*, 431 U.S. 324 (1977).

In a pattern-or-practice case, the plaintiff tries to "establish by a preponderance of the evidence that ... discrimination was the company's standard operating procedure[,] the regular rather than the unusual practice…. If [s]he succeeds, that showing will support a rebuttable inference that all class members were victims of the discriminatory practice, and will justify "an award of prospective relief," such as "an injunctive order against the continuation of the discriminatory practice." *Teamsters*, *supra*, at 361, 97 S.Ct. 1843.

Where significant discretion in promotion decisions exists, Plaintiffs must show a "common mode of exercising discretion that pervades the entire company." *Id.* at 2554–55. *Dukes* acknowledged that "in appropriate cases,' giving discretion to lower-level supervisors can be the basis of Title VII liability under a disparate-impact theory—since 'an employer's undisciplined system of subjective decisionmaking [can have] precisely the same effects as a system pervaded by impermissible intentional discrimination.' " 131 S.Ct. at 2554 (quoting Watson v. Fort Worth Bank & Trust, 487 U.S. 977, 990–91, 108 S.Ct. 2777, 101 L.Ed.2d 827 (1988).)

The same reasons *Ellis v. Costco*'s disparate impact claim was certified are present here.

(1) A tap-on-the-shoulder appointment process: Emma Majo sufficiently alleged that a "tap-on-the-shoulder" promotion process exists through "off cycle" promotions. (FAC ¶ 75.) Additional facts can be plead if needed as shown in Sections II.A, II.B, II.D.

(2) Promotion exclusively from within: Emma Majo sufficiently alleged that Sony engages in internal favoritism such that people at Sony with high-level job titles are eligible for more promotions—which preserves the status quo. (FAC ¶ 76.) Additional facts can be plead if needed as shown in Sections II.A, II.B, II.C.

(3) Requirement of Specific in-house Experience: Emma Majo sufficiently alleged that Sony uses current job titles as a major factor in deciding future promotions. (FAC ¶ 76.)

-14-

Additional facts can be plead if needed as shown in Sections II.A, II.B.

(4) Reliance on unwritten and informal evaluation of candidates: Emma Majo sufficiently alleged that Sony relies on unwritten criteria to evaluate candidates. (FAC ¶¶ 72, 76.). Additional facts can be plead if needed as shown in Sections II.B.

(5) Reliance on promotable lists of desired candidates: Emma Majo sufficiently alleged that Sony uses predetermined factors—other than performance—to decide who is eligible for a promotion. (FAC ¶ 76.). Additional facts can be plead if needed as shown in Sections II.A.

### C. Certification Factors Are Satisfied Although No Discovery Has Occurred

Emma Majo has sufficiently alleged all facts necessary to prevail on certification. Plaintiff alleged why the class is ascertainable (FAC ¶ 23 (California Class) and ¶ FAC ¶ 55 (Nationwide Class)) and so numerous that joinder would be impracticable. (FAC ¶¶ 25, 32.) Plaintiff is typical because she is a member of the Classes she seeks to represent. (FAC ¶¶ 26, 37, 38, 42.) A Class action is the most efficient method to adjudicate these claims because of the classwide policies and practices. (FAC ¶ 29.) There are many common issues of law and fact. (FAC ¶¶ 3, 34, 35.) The gender-biased policies and practices apply uniformly at all locations. (FAC ¶¶ 36, 48, 49.) Sony has a companywide pattern and practice of treating males and female workers differently. (FAC ¶ 39.) On a classwide basis, Sony fails to address explicit reports of sexual harassment and discrimination. (FAC ¶ 40.) Sony has failed to create affirmative policies that would comply with anti-discrimination laws and fails to discipline supervisors who harass women. (FAC ¶ 41.)

Plaintiff is adequate (FAC ¶ 46) because she is ready and willing to vigorously prosecute the action. She has hired counsel that is adequate because her counsel has significant class action experience including in this Court. (FAC ¶ 46.)

Common issues of law and fact predominate (FAC ¶ 51); a class action is superior (FAC ¶ 52); because the class was discriminated against in the same manner. (FAC ¶ 60.)

### D. Certification Should Not Be Decided Before Discovery Begins

Sony's attempt to adjudicate all class action issues is premature. The majority of class actions resolve class certification after an appropriate period of discovery, as discovery helps clarify the legal and factual predicates of the class action. *Brazil v. Dell Inc.*, 2008 U.S. Dist.

ILG Legal Office, P.C.

Tel: (415) 580-2574 | Email: help@ilglegal.com

ILG Legal Office, P.C.

Tel: (415) 580-2574 | Email: help@ilglegal.com

LEXIS 95348, *9 (N.D.Cal. Nov. 14, 2008). Dismissal of class actions at the pleading stage is rare and courts are hesitant to resolve class issues early because the class determination generally involves considerations that are "enmeshed in the legal and factual issues comprising the plaintiff's cause of action." *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 160 (1982). To the extent Defendant argues that the defined classes are inappropriate for certification, such arguments are premature; a motion to strike based on an argument that the alleged class cannot satisfy FRCP Rule 23(b) requirements for class certification (such as commonality) is disfavored since the proper means by which to address class certification issues is via the motion for class certification. *Thorpe v. Abbott Laboratories*, 534 F.Supp.2d 1120, 1125 (N.D.Cal. 2008). Such issues are better addressed at the class certification hearing where the Court may decide to create subclasses if necessary. See id.

### E.  No Conflict Exists Among the Classes

The Ninth Circuit discussed such conflicts in *Staton v. Boeing Co*. 327 F.3d 938, 958 (9th Cir. 2003), saying "[t]he question whether employees at different levels of the internal hierarchy have potentially conflicting interests is context-specific and depends upon the particular claims alleged in a case." Cases finding a conflict between supervisors and non-supervisors tend to involve claims of one against the other; for example, in *Wagner v. Taylor*, 836 F.2d 578 (D.C. Cir. 1987) conflict existed because the proposed representative accused his own supervisor (a class member) of discrimination. In this case, however, there is no conflict that would destroy the Plaintiff's ability to represent the class. "Plaintiffs attempting representation of nonsupervisory employees by supervisory employees…must offer evidence of coextensive interests or at least allege the existence of a general discriminatory policy." *Staton*, 327 F.3d at 959 (quoting Herbert B. Newberg & Alba Conte, Newberg on Class Actions, §24.42 at 24-170-71 (3d ed. 1992)).

### IV.   LEAVE TO AMEND SHOULD BE GIVEN FOR CURABLE DEFICIENCIES

If any of the claims are deemed improper, they can likely be cured by a simple amendment to the pleadings. "If a complaint is dismissed for failure to state a claim, leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distributing Co. v. Serv-*

ILG Legal Office, P.C.

Tel: (415) 580-2574 | Email: help@ilglegal.com

*Well Furniture Co., Inc.*, 806 F.2d 1393, 1401 (9th Cir. 1986). Leave for such amendments is freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). *See also Forman v. Davis*, 371 U.S. 178, 182 (1962) ("In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'"). Here, there was no undue delay since the parties have not yet appeared for an initial case management conference or exchanged initial disclosures. Moreover, none of the purported deficiencies are due to any "bad faith" or "dilatory motive" on Plaintiff's part, and no court has yet reached the issue of whether any party should be afforded leave to amend the pleadings. Moreover, Defendant will incur no prejudice by the amendments contemplated herein as the operative pleadings provided Sony with sufficient notice of the claims. Thus, if this Court finds any deficiencies, Plaintiffs hereby seek leave to file a Second Amended Complaint.

Sony baldly asserts "Plaintiff admits she has no knowledge of of how SIE conducts its business in locations outsider her own, and thus cannot credibly allege she is similarly situated to the class she seeks to represent." (Def. MTD 10:23-26.) This false statement, submitted with no evidence or citation, has been disproven by the declarations from Emma Majo's co-workers.

**V.    EACH CLAIM IS SUFFICIENTLY PLEAD AND, IF NECESSARY, ANY DEFICIENCIES COULD BE CURED**

"[I]n acting on a motion to dismiss, the Plaintiffs' allegations must be assumed to be true and the complaint must be construed in the light most favorable to the Plaintiffs." *U.S. v. City of Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (to survive a motion to dismiss, complaint need only contain factual claims, accepted as true, to state a claim for relief that is plausible). A motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted. *Gillian v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997); *Hall v. City of Santa Barbara*, 833 F.2d 1270, 1274 (9th Cir. 1986) (overruled on other grounds) ("It is axiomatic that the motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted.'") (internal quotation omitted). In order to state a claim, the

ILG Legal Office, P.C.

Tel: (415) 580-2574 | Email: help@ilglegal.com

Federal Rules of Civil Procedure ("FRCP") require only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The FRCP describes "a liberal system of 'notice pleading'" whereby Plaintiffs' "short and plain" statement need only give "the defendant fair notice of what the Plaintiffs' claim is and the grounds upon which it rests." *Walsh v. Nevada Dept. of Human Resources*, 471 F.3d 1033, 1036 (9th Cir 2006) (internal citations omitted). The FRCP 8 standard contains "a powerful presumption against rejecting pleadings for failure to state a claim." *Auster Oil & Gas, Inc. v. Stream*, 764 F.2d 381, 386 (5th Cir.1985). A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). A plaintiff need only provide the "grounds" of his "entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

### A.  Claim 1: FLSA, 29 U.S.C. § 216(B), Denial of Equal Pay for Equal Work

Emma Majo has sufficiently alleged her collective action under FLSA. The Nationwide Class (FAC ¶ 55) was alleged based on the contentions that female employees (a) were not compensated equally to male employees who had substantially similar job classifications, functions, titles, and/or duties, (b) were not compensated equally to male employees who performed substantially similar work, and/or (c) were denied equal compensation to similarly situated male employees by being held back to lesser pay levels than male employees who performed substantially similar work and had substantially similar experience. (FAC ¶ 58; *see also id.* ¶ 63.) The FLSA claim incorporated the prior facts section providing specific examples of classwide policies and practices. (FAC ¶¶ 15, 16, 35, 39, 40, 41, 48, 49, 57, 59, 70, 79.)

The *Gunther* case cited by Sony (Def. MTD 8:9-15) makes clear why Sony's Motion is improper; in *Gunther*, a determination occurred ***after a trial concluded***. "After trial, the District Court found that the male guards supervised more than 10 times as many prisoners per guard as did the female guards, and that the females devoted much of their time to less valuable clerical duties. It therefore held that respondents' jobs were not substantially equal to those of the male guards…." *Washington Cty. v. Gunther*, 452 U.S. 161, 165 (1981). This certification issue cannot be adjudicated when Sony had not participated in any discovery.

ILG Legal Office, P.C.

Tel: (415) 580-2574 | Email: help@ilglegal.com

After Sony's citation to a case about the FLSA EPA standard **after trial** it then cites to twenty (20) cases from the East Coast where a pleading was dismissed, and then one (1) from this District. (Def. MTD 8:25-10:22.) Sony's instant Motion asks this Court to dismiss the federal EPA without leave to amend, but a cursory look at the one case from this District reveals why Sony's request is improper: in the *Bush v. Vaco* case, three rounds of motions to dismiss and strike had already occurred. "This is the third round of motions to dismiss/strike class allegations in this labor law class action. In the previous two rounds, the Court strongly warned Plaintiff Christiana Bush that her class allegations and definitions were so broad as to be wholly implausible." *See Bush v. Vaco Tech. Servs., LLC*, No. 17-CV-05605-BLF, 2019 WL 3290654, at *1 (N.D. Cal. July 22, 2019). And even after **three rounds** of motions to dismiss and strike, the Court still granted leave to amend as to certain claims. "Google's and VTS's motions are GRANTED WITH LEAVE TO AMEND IN PART AND WITHOUT LEAVE TO AMEND IN PART." *Id.* at *5 (capitalization in original).

Sony asks this Court to rule on conditional certification, but there is no pending motion for conditional certification of FLSA claims yet. Sony cites cases explaining the two-step approach to assess a collective action. (Def. MTD 10:28-12:4 (citing, *inter alia*, *Rivera v. Saul Chevrolet, Inc.*, No. 16-CV-05966-LHK, 2017 WL 3267540, at *2 (N.D. Cal. July 31, 2017).) This case has not yet reached the first stage of the two-step process, yet Sony asks the Court to leap frog to the end result—before any formal discovery has occurred—and dismiss all claims without leave to amend.

**B. Claim 2: Declaratory Judgment, 28 U.S.C. § 2201**.

Sony relies on *Achal v. Gate Gourmet, Inc.*, 114 F. Supp. 3d 781, 819 (N.D. Cal. 2015) to argue that the request for a Declaratory Judgment should be dismissed because it is redundant, but the Ninth Circuit has held that the Court has discretion to grant or deny declaratory relief and, moreover, that the Court should exercise this discretion based on a full record. "In fact, the court may, after a full consideration of the merits, exercise its discretion to refuse to grant declaratory relief because the state of the record is inadequate to support the extent of relief sought." *United States v. State of Wash.*, 759 F.2d 1353, 1356 (9th Cir. 1985). Plaintiff's allegations are sufficient

ILG Legal Office, P.C.

Tel: (415) 580-2574 | Email: help@ilglegal.com

to establish that an actual case or controversy exists (FAC ¶¶ 83, 84, 88) regarding disputed issues, which is all that is required at the pleadings stage.

### C.  Claim 3: California Equal Pay Act, Cal. Labor Code §§1197.5 et seq., 1194.5.

One of the cases Sony cites (Def. MTD 10:15-16) provides the basic standard for a California Equal Pay Act claim: "To prove a violation of that basic principle, a plaintiff must establish that, based on gender, the employer pays different wages to employees doing substantially similar work under substantially similar conditions." *Hall v. Cty. of Los Angeles,* 148 Cal. App. 4th 318, 323 (2007). Plaintiff Emma Majo alleged sufficient facts to support the claim by asserting that women are paid less than men for the same work. (FAC ¶¶ 15, 16, 35, 39, 40, 41, 48, 49, 57, 59, 70, 79, 91, 92, 93.)

Sony asks this Court to dismiss the Equal Pay Act claim based on the argument that individualized evidence will be required. "Individualized evidence about actual job performance and content—not titles or classifications—is determinative, and there is no way to shortcut such analysis. (Def. MTD 21:16-18.) But discovery has not yet begun and, thus, the Court cannot rule on whether "there is no way to shortcut such analysis," as Sony phrased it. The legal authority cited by Sony—*Gunther*—makes clear why Sony's Motion is improper; in *Gunther*, a determination occurred after a trial concluded. "After trial, the District Court found that the male guards supervised more than 10 times as many prisoners per guard as did the female guards, and that the females devoted much of their time to less valuable clerical duties. It therefore held that respondents' jobs were not substantially equal to those of the male guards…." *Washington Cty. v. Gunther*, 452 U.S. 161, 165 (1981). This certification issue cannot be adjudicated when Sony had not participated in any discovery.

Sony's other legal authorities similarly reveal why its Motion must be denied; those decisions occurred ***after discovery had concluded***. It also cites *Duran v. U.S. Bank Nat'l Ass'n,* 59 Cal. 4th 1, 28-29 (2014). "Phase one of the bench trial lasted 40 court days." *Id.* at 18. *see also O'Reilly v. Daugherty Sys., Inc.,* No. 4:18-CV-01283 SRC, 2021 WL 4514293, at *1 (E.D. Mo. Sept. 30, 2021) ("Following the close of discovery"); *Kassman v. KPMG LLP*, 416 F. Supp. 3d 252, 268 (S.D.N.Y. 2018) ("chart was created in conjunction with Lynne Doughtie's April 17,

-20-

1  2018, declaration -- i.e., after fact discovery was closed");

2      Sony cites an unpublished, out-of-circuit case from Illinois where an EPA claim was

3  dismissed on the pleadings. First, Sony mistakenly cites (Def. MTD 12:17-22) this federal EPA

4  case regarding its California EPA argument. More importantly, even that case granted the plaintiff

5  leave to amend and, thus, it does not support Sony's instant request. *Wade v. Morton Bldgs., Inc.*,

6  No. 09-1225, 2010 WL 378508, at *8 (C.D. Ill. Jan. 27, 2010) ("without prejudice to filing an

7  Amended Complaint").

8      Sony admits that the California EPA was amended to "broaden the comparator standard

9  from 'equal work' to 'substantially similar' work and change the elements of employer

10  affirmative defenses." (Def. MTD 12:26-28, fn. 9.)

11      Sony argues that Plaintiff Emma Majo did not allege that males performing similar work

12  were paid more and that she does not allege any facts about other putative class members. Not so.

13  Plaintiff Emma Majo alleged that other women shared her experiences. (FAC ¶¶ 91, 95, 96.)

14  **D.  Claim 4: FEHA, Unequal Pay & Failure to Promote, Cal. Gov't Code §§ 12940**

15  Sony describes the elements of a FEHA discrimination claim as showing that Plaintiff: "(1) is a

16  member of a protected class; (2) suffered an adverse employment action; (3) performed her job

17  competently in the position held; and (4) some other circumstance suggesting discriminatory

18  motive based on the protected class. *See Cucuzza v. City of Santa Clara*, 104 Cal. App. 4th 1031,

19  1038 (2002)." (Def. MTD at 13:26-28, fn. 11.) Plaintiff's allegations satisfy the elements for a

20  FEHA claim as described by Sony as shown by the following paragraphs of the FAC: (1) Plaintiff

21  was a female employee of SIE (FAC ¶ 38); (2) she suffered adverse employment actions (FAC

22  ¶¶ 68, 70, 71, 72, 77, 78); (3) Plaintiff was qualified and was performing well (FAC ¶ 183); and

23  (4) Other women similarly experienced discrimination and retaliation. (FAC ¶¶ 91, 95, 96.)

24      Sony describes the elements of a FEHA harassment claim as showing that: "(1) she is a

25  member of a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment

26  was based on her protected class; and (4) the harassment unreasonably interfered with her work

27  performance by creating an intimidating, hostile or offensive work environment. *See Lyle v.

28  Warner Bros. Television Prods.*, 38 Cal. 4th 264, 277-79 (2006)." (Def. MTD 14:28, fn.13.)

ILG Legal Office, P.C.

Tel: (415) 580-2574 | Email: help@ilglegal.com

-21-

ILG Legal Office, P.C.

Tel: (415) 580-2574 | Email: help@ilglegal.com

Plaintiff's allegations satisfy the elements for a FEHA harassment claim as described by Sony for the following reasons: (1) Plaintiff was a female employee of SIE (FAC ¶ 38); (2) she was subjected to unwelcome harassment (FAC ¶¶ 67, 72); (3) the harassment was based on her protected class (FAC ¶¶ 67, 72); and (4) the harassment created a hostile, offensive work environment (FAC ¶¶ 67, 72).

Sony argues that Emma Majo "provides no allegations whatsoever that she or any other female was subjected to a work environment 'permeated with discriminatory intimidation, ridicule and insult' which was 'sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment.' *Kelly-Zurian*, 22 Cal. App. 4th at 409 (1994)." (Def. MTD 15:15-19.) Plaintiff's allegations already put Sony on notice that other females at Sony were also subjected to unlawful harassment. Moreover, the signed declarations submitted herewith prove that any deficiencies can be remedies through amendment.

### E.  Claim 5: FEHA, Failure to Prevent and Investigate, Cal. Gov't Code §§ 12940

Sony claims that Plaintiff "does not plead sufficient facts to plausibly suggest such discrimination or harassment occurred (let alone that SIE knew or should have known about it and failed to prevent it)." (Def. MTD 15:22-24.)  This argument fails for the following reasons: (1) Plaintiff's allegations already put Sony on notice of the underlying facts, as set forth immediately above, (2) the evidence on hand already shows that any deficiencies could be cured through amendment, as shown by the declarations by Emma Majo's colleagues.

### F.  Claim 6: Failure to Pay Final Wages, Cal. Labor Code §§ 201-203

Emma Majo does not oppose Sony's motion to dismiss Failure to Pay Final Wages under Labor Code sections 201 to 203.

### G.  Claim 7: Unfair Competition, Cal. Bus. & Cal. Gov't Code §§ 12940

Emma Majo agrees that the Unfair Competition claim borrows legal standards from other substantive claims. Because other claims are properly plead, the UC Claim must also be upheld.

### H.  Claim 8: PAGA, Cal. Lab. Code § 2698

Emma Majo agrees that the PAGA claim borrows legal standards from other substantive claims such as the California Equal Pay Act. Because Emma Majo's claims are properly plead,

ILG Legal Office, P.C.

Tel: (415) 580-2574 | Email: help@ilglegal.com

the PAGA Claim must also be upheld. Sony argues that Plaintiff cannot use PAGA to recover unpaid wages such as the EPA claim. (Def. MTD 22:27-28, fn. 18.) This is beside the point at this stage. Plaintiff's PAGA claim can trigger PAGA penalties which often are measured as a flat amount per pay period where a violation occurred. Sony is correct the *federal* EPA claim cannot combine with PAGA because PAGA only combines with California Labor Code claims; however, it can combine with the California EPA and can trigger any penalties set forth in Labor Code §§ 2698 *et seq.*

## I. Claim 9: Wrongful Termination-Public Policy, *Tameny*

Emma Majo agrees wrongful termination in violation of public policy will be governed by a similar substantive legal analysis as her wrongful termination claim based on FEHA. Because Emma Majo's FEHA wrongful termination claim is sufficiently plead, so too is this claim.

## J. Claim 10: Intentional Infliction of Emotional Distress

"The tort of intentional infliction of emotional distress is comprised of three elements: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff suffered severe or extreme emotional distress; and (3) the plaintiff's injuries were actually and proximately caused by the defendant's outrageous conduct." *Cochran v. Cochran*, 65 Cal. App. 4th 488, 494 (1998).

Sony attempts to dismiss all of this as a normal part of the employment relationship. (Def. MTD 23:14-25.) However, many aspects of the alleged conduct fall outside the boundaries of personnel management activity. For example, in *Jones v. Dep't of Corr. & Rehab.*, 152 Cal. App. 4th 1367, 1380 (2007), the Court stated that "adverse employment action is not limited to 'ultimate' employment acts, such as hiring, firing, demotion or failure to promote, but also includes the entire spectrum of employment actions that are reasonably likely to adversely and materially affect an employee's job performance or opportunity for career advancement." Therefore, it is incorrect to label Defendants' conduct as routine employment decisions rather than adverse employment actions. Further, even the Court considers cases like these to be close, since the determination of whether conduct rises to the level of extreme and outrageous is a question of fact for the jury. *See Alcorn v. Anbro Engineering, Inc.*, 2 Cal. 3d 493, 499 (1970).

**ILG Legal Office, P.C.**

Tel: (415) 580-2574 | Email: help@ilglegal.com

Finally, Sony incorrectly contends Plaintiff's IIED claim is preempted by the exclusivity of the Workers' Compensation Act. (Def. MTD 23:16-18.) Yet, California courts have regularly held that unlawful retaliation "in violation of FEHA falls outside the compensation bargain and therefore claims of intentional infliction of emotional distress based on such discrimination and retaliation are not subject to workers' compensation exclusivity." *Light v. California Dep't of Parks & Recreation*, 14 Cal. App. 5th 75, 101, (2017). In *Cabesuela v. Browning-Ferris Indus. of California, Inc.*, 68 Cal. App. 4th 101, 113 (1998). the court ruled that because plaintiff's "emotional distress claim is premised upon his employer's violation of a fundamental public policy of this state, such misconduct lies outside of the exclusive remedy provisions of the Labor Code." *Id.* at 113. A number of cases have found exceptions to this general rule of preemption, where an employer's conduct exceeds the risks inherent in the employment relationship or where the employer's actions are in violation of a fundamental public policy. *See Grotz v. Kaiser Found. Hosps.*, No. C-12-3539 EMC, 2012 WL 5350254, at *10 (N.D. Cal. Oct. 29, 2012)

Plaintiff here, like in **Cabesuela**, has also stated a cause of action for wrongful termination in violation of public policy and FEHA-based harassment and discrimination. Therefore, Plaintiff has also stated a cause of action of IIED which is not barred by workers' compensation exclusivity because it is based on Defendants' violation of fundamental public policy.

### K. Claim 11: Negligent Infliction of Emotional Distress, Civ. Code § 1714

Sony argues that Plaintiff did not allege SIE owed her a duty to avoid negligently causing emotional distress and cites a California Supreme Court case, but that case held that the NIED claim was proper. "We conclude that the mothers stated a cause of action for the negligent infliction of emotional distress…." *Marlene F. v. Affiliated Psychiatric Med. Clinic, Inc.*, 48 Cal. 3d 583, 592 (1989). Thus, *Marlene F.* does not support Sony's arguments.

The *Marlene F.* case makes clear that the duty owed to the plaintiff can arise because of the law imposed a particular duty—like a duty to prevent and investigate discrimination. *Id.* at 590 ("breach of a duty owed the plaintiff that is assumed by the defendant ***or imposed on the defendant as a matter of law***"). Plaintiff has alleged that Sony owed a duty based on anti-discrimination laws. Her NIED claim incorporates the facts section. (FAC ¶ 166.)

ILG Legal Office, P.C.

Tel: (415) 580-2574 | Email: help@ilglegal.com

### L.  Claim 12: Discrimination and Harassment, Cal. Gov't Code §§ 12940

Sony feigns confusion (Def. MTD 24:1-12) about Plaintiff's claim for discrimination and retaliation. Plaintiff's allegations are clear: she alleges both that she was discriminated against and retaliated against for speaking up about discrimination. Sony argues Plaintiff failed to plead a causal link. Not so. Plaintiff's FEHA claim incorporated the allegations within the facts section. (FAC ¶ 171.) Plaintiff alleged a causal link between her termination and (a) discrimination against women and (b) reporting of discrimination against women.[1]  (FAC ¶¶ 77-78.)

### M. Claim 13: Retaliation, Cal. Lab. Code §§ 232.5, 1102.5

Sony claims Plaintiff did not sufficiently notify it of the specific statutory or regulatory violation at issue, citing *Chan v. Canadian Standards Ass'n*, No. SACV192162JVSJDE, 2020 WL 2496174, at *2 (C.D. Cal. Mar. 16, 2020). But the issue in *Chan* was the Plaintiff's complaint failed to allege a specific statute or regulation that was violated; in this case, Plaintiff has cited a variety of statutes violated such as FEHA, California EPA, and federal EPA.

Emma Majo properly alleged that Sony violated FEHA (FAC ¶ 190) and that her termination resulted from discrimination and as retaliation for speaking up about discrimination. (FAC ¶195; *see also* FAC ¶ 196.) She alleged her termination was in retaliation for disclosing working conditions, vis-à-vis discrimination against women. (FAC ¶ 191.) She also incorporated by reference all prior allegations. (FAC ¶ 189.) Allegations within the facts section also explicitly provides facts to support causation. (FAC ¶¶ 77, 78.)

### VI.    CONCLUSION

Emma Majo's complaint sufficiently notified Sony of the basis for individual and group treatment of gender-based claims. Sony's Motion to Dismiss relies on fictitious factual statements and hijacks language from post-discovery cases in an attempt to end this lawsuit before discovery even begins. The Court should reject Sony's Motion outright or allow leave to amend.

---

[1]     Sony cites one case (Def. MTD 24:9-11) where leave to amend was not granted, but that case is quite different because the plaintiff "offers neither purported facts to cure the FAC's severe deficiencies nor meaningful opposition to most of defendants' challenges." *McKenna v. Permanente Med. Grp., Inc.*, 894 F. Supp. 2d 1258, 1284 (E.D. Cal. 2012). In this case, Plaintiff has opposed most of defendants' challenges, provided additional facts from fellow class members, and proposed additional facts she could add through amendment.

Respectfully submitted,

DATED: March 8, 2022          **ILG Legal Office, P.C.**

Stephen Noel Ilg

Attorneys for Plaintiff and the Plaintiff Class

**ILG Legal Office, P.C.**
Tel: (415) 580-2574 | Email: help@ilglegal.com

*Majo v. Sony Interactive Entertainment LLC*
Plaintiff Emma Majo's Opposition to Sony's Motion to Dismiss and Strike